### KENYON, administrator, v. BRIGHTWELL.

1. It is error to refuse to sanction a petition for certiorari from the judgment of a justice of the peace, when it appears from the petition that upon the call of the case in the justice's court the panel of nine jurors was challenged by the complaining party; that five of the nine jurors announced that they had publicly expressed an opinion as to which party should prevail on the

trial; that the plaintiff in certiorari then objected to the panel; and that the magistrate overruled his objection, and forced him to trial.

2. Where a petition for certiorari shows that the verdict in the justice's court was for a greater amount than was claimed by the plaintiff, the judge should not refuse to sanction the petition.

3. When a married woman dies leaving a husband surviving her, the husband is primarily liable, and not the estate of the deceased, for the payment of her funeral expenses.

4. The administrator of a deceased person is not liable for the funeral expenses of the decedent when it appears that the credit therefore was extended to a third person, on the express promise of such third person to pay the bill.

Argued June 17, — Decided July 13, 1904.

Petition for certiorari. Before Judge Sheffield. Terrell superior court. September 8, 1903.

*W. H. Gurr* and *H. A. Wilkinson*, for plaintiff in error, cited Civil Code, §§ 2474, 2477, 2478, 2488, 3424; 92 *Ga.* 769; 8 Am. & Eng. Enc. L. (2d ed.) 1025–26; 3 Nott & McCord (S. C.), 512.

*M. C. Edwards*, contra, cited 100 Cal. 345; 146 Mass. 281 (4 Am. St. R. 311); 18 Misc. Rep. (N. Y. Sur. Ct.) 139; 44 Ohio St. 184 (58 Am. R. 814); 14 R. I. 41; 15 R. I. 438; 15 Pa. Co. Ct. Rep. 316; 14 Hun (N. Y.), 562; 19 Abb. N. Cas. (N. Y.) 86; 17 Am. R. 384; 61 How. Pr. 399; 6 Madd. 90; 8 Ad. & El. 348 (E. C. L. 448); 2 C. & M. 612; 3 Camp. 298; 3 Y. & J. 28; 75 Pa. St. 220; 41 N. J, Eq. 299; 3 Dem. (N. Y.) 524; 1 Ashm. (Pa). 314; 8 Pa. Co. Ct. 1; 24 Ala. 295; 76 Cal. 589; 30 Conn. 209; 44 Miss. 124; 59 Ala. 516; 62 Iowa, 513.

CANDLER, J. This case comes up on exceptions to the refusal of the judge of the superior court to sanction a petition for certiorari. From the petition it appears that the suit was an action in a justice's court against the administrator of a deceased married woman, to recover a sum alleged to be due as part of the burial expenses of the defendant's decedent. The husband of the deceased was living at the time of her death, and became the administrator of her estate. The amount claimed was $16.35. Upon the call of the case in the justice's court, " nine jurors were present to try the case. Upon said jury being challenged, five of them announced that they had publicly expressed an opinion as to who should prevail in the trial of the case, while two of this five stated that they thought they might be able to decide the case according to the evidence, and not by what they had previously heard and said. Petitioner's counsel objected to said jury; whereupon the court

held that this was as good a jury as there was in the district, and ordered the trial to proceed." Evidence was introduced which made out substantially the following case: Immediately after the death of Mrs. Kenyon, her stepfather, Statham, at the instance of his wife, gave directions by telegraph that the grave, which was being prepared, should be walled with brick, and in accordance with these directions Statham's agent gave to the plaintiff an order for the necessary brick, lime, and cement, the purchase-price of which is the subject of this suit. Kenyon, the husband, and subsequently the administrator of the deceassd, and the Stathams had not been friendly for several years. Litigation had been pending between them for a number of years, and during that time they had not been on speaking terms. At the time of Mrs. Kenyon's death she had property amounting in value to about $2,000, but there were debts against the estate, the amount of which the record does not disclose. Kenyon had been his wife's guardian, and it is inferable that at the time of her death she had not attained her majority. Kenyon declined to authorize the order for bricking up the grave, stating that his and his wife's property together was not sufficient to defray the expenses incurred during her last illness, and that he did not intend to create any more debts except such as were absolutely necessary. Mrs. Statham, however, was anxious that the grave should be walled, and directed her husband to have it done as above outlined. She also sent her brother, York, to see that the work was properly done. York supplemented the order already given by telegraph, and personally informed the plaintiff that if Mrs. Statham did not pay for the materials he would. The jury returned a verdict for the plaintiff for $17.68. The assignments of error in the petition which were insisted upon were, that the magistrate erred in requiring petitioner to strike from a jury of nine, five of whom stated in open court that they had publicly expressed an opinion as to which party should prevail; that the verdict was for a larger sum than that sued for by the plaintiff; and that the verdict was contrary to law and the evidence.

1. It is clear that the plaintiff in error, who was the defendant in the justice's court, was entitled to a hearing of his case before a jury regularly chosen in accordance with the provisions of law; and it is equally clear that those jurors who admitted having

formed and publicly expressed an opinion as to which party should prevail were not competent, on objection, to serve in the case. Under the Civil Code, § 4143, there should have been a panel of nine jurors, with the privilege to each party to strike two, leaving a jury of five to try the case. When from any cause the disqualification of any one of the panel is shown, there is no longer a lawful panel, and the proceedings should not go on, in the absence of a waiver, until a lawful panel is completed. It makes no difference that the petition for certiorari fails to show that the jurors were put on their voir dire. The object of the voir dire is merely to appeal to the conscience of the juror; and when, without resorting to that means, he makes known his disqualification in any way, the remedy of the complaining party is at once available. Nor does it matter that the petition fails to show that the preference expressed by the jurors was in favor of the plaintiff. Upon ascertaining that jurors were disqualified to serve on account of having expressed opinions as to which party should prevail, the defendant was not bound to go further and inquire into the precise state of their minds, but could immediately object to them as jurors.

2. In refusing to sanction the petition for certiorari the judge evidently assumed that the difference between $16.35, the amount sued for, and $17.68, the amount of the verdict, represented the interest due on the debt. It must be borne in mind, however, that in passing upon the question whether the petition should be sanctioned, the allegations of the petition must be taken as true, to the same extent that pleadings are taken at their face value for the purposes of demurrer. So far as appears from the petition in this case there was no claim for interest, but $16.35 represented the entire amount claimed; and the fact that a verdict for a greater amount than this was rendered in favor of the plaintiff furnished a sufficient ground for sanctioning the petition.

3, 4. The contention that the verdict was contrary to law and the evidence opens up a most important question, and one which, so far as we have been able to ascertain, has never before been decided by this court. The plaintiff in error takes the broad position that the estate of a married woman who dies leaving a husband surviving her is not liable for her funeral expenses. At common law, undoubtedly, a husband was bound to bury his deceased

wife in a manner suitable to his station in life, and was also bound to defray all her funeral expenses.. This rule prevails in many, though not all, of the States of this country, a few of the States having prescribed a different rule by statute. The duty to defray the wife's funeral expenses grows out of the obligation on the husband to provide her with necessaries in life. It has been held that the husband has supreme authority to direct where the wife shall be buried ; that it is his duty to care for her grave, that in selecting a place for the interment of the body he may act regardless of the wishes of her family, and even that he may remove a gravestone placed at the head of the wife's grave by her mother and substitute another more in keeping with his taste. Durell *v.* Heyward, 9 Gray (Mass.), 248. See also 11 Am. & Eng. Enc. L. (2d ed.) 1262. " The right of removal rests on ' the indisputable and paramount right, as well as duty, of a husband to dispose of the body of his deceased wife by a decent sepulture in a suitable place.' " Smyley *v.* Reese, 53 Ala. 97. Our Civil Code provides (§ 3424) that " In the payment of the debts of a decedent, they shall rank in priority in the following order: 1. Year's support for the family. 2. Funeral expenses to correspond with the circumstances of the deceased in life, including the physician's bill and expenses of the last sickness," etc. On the strength of this section, counsel for the plaintiff in the court below insisted that the common-law rule before referred to has been abrogated in this State, and that the estate of every decedent is liable for the payment of funeral expenses. We do not think that this contention is sound. To the extent that it is in derogation of the common law the statute under consideration must, of course, be strictly construed. The statute merely provides for the priority to be observed in the payment of debts due by the estate of a decedent. Unless specially made so by statute or by the provisions of her will, the funeral expenses of a married woman who leaves a husband surviving her are not a debt of her estate. As was said by Brickell, C. J., in Smyley *v.* Reese, supra, statutes creating separate estates of married women, while they deprive the husband of rights which would have otherwise accrued and could have been asserted at common law, do not absolve him from the duties the common law imposes. " The common law compelled him to maintain his wife — to supply her with necessaries suitable to her situation, and

corresponding with his social position, and the degree of his fortune. If the husband neglects this duty, the wife may on his credit, against his will; obtain necessaries, and he will be liable for them. In such case she is presumed to have authority to bind him, but the presumption is made only to enforce a performance of the duty. Schouler's Dom. Rel. 85; 2 Kent, 128; Tyler's Inf. & Cov. 340. This duty of the husband did not arise from, nor was it solely dependent on, the common-law principle, that marriage was a gift to the husband of the wife's estate — that he thereby became vested with an ownership qualified or absolute, of her property, and rights of property. The duty was as obligatory on the husband, to whom the wife brought no portion, as on him who had received the largest fortune. It was a consequence of the merger of the legal existence of the wife in that of the husband. . . The power to rule the household is committed to the husband. The wife is in subjection to, and dependent on, the husband; and from this subjection and dependence springs the duty to maintain her; as from the same relation of subjection and dependence arises the duty of maintaining the offspring of the marriage. The common law permitted parties entering into the marriage relation to separate the wife's property from the husband's, and by contract to exclude the rights the husband would have otherwise acquired therein. From a separate estate thus created the wife was not compelled to make any appropriation for her own support — nor had the person supplying her necessaries in the absence of a contract, express or implied, made by the wife, any equity to charge it."

The Civil Code, § 2473, provides that: "In this State the husband is the head of the family, and the wife is subject to him; her legal civil existence is merged in the husband, except so far as the law recognizes her separately, either for her own protection, or for her benefit, or for the preservation of public order." Section 2477 provides that: "The husband is bound to support and maintain his wife, and his consent shall be presumed to her agency in all purchases of necessaries suitable to her condition and habits of life, made for the use of herself and the family." Involved in this duty to support and maintain the wife and family is that of providing a physician and medicines for them in sickness, and of burying them upon death. Schouler's Dom. Rel. (5th ed.) § 199.

That this is the law generally of force in this country we think an examination of the authorities will clearly show.   Sears *v.* Giddy, 41 Mich. 590; Dalrymple *v.* Arnold, 21 Hun (N. Y.), 110; Patterson *v.* Patterson, 59 N. Y. 574; Staples' Appeal, 52 Conn. 426; Cunningham *v.* Riordan, 98 Mass. 538; Willis *v.* Jones, 57 Md. 368; In re Weringer, 100 Cal. 345.   In those States where the contrary doctrine has been announced, so far as we have been able to ascertain, the rulings were based on special statutes expressly applicable.   In some instances these statutes provide for the payment of funeral expenses out of the wife's separate estate where the husband is insolvent.   In Ohio a married woman's separate estate may be charged with the payment of her funeral expenses, even though her husband, having property, survive her.   McClellan *v.* Filson, 44 Ohio St. 184.   In the case of Moulton *v.* Smith, 16 R. I. 126, it was held that a husband who administered upon the estate of his deceased wife was entitled to retain therefrom the funeral and probate expenses paid by him, together with a reasonable compensation for his services as administrator; but that ruling rested on a Rhode Island statute which provided that " the estate of every deceased person shall be chargeable with the expenses of administering the same, and the funeral charges of the deceased, . . and the same shall be paid by the executor or administrator of the estate out of the same, so far as the same shall be sufficient therefor."   See also Buxton *v.* Barrett, 14 R. I. 40.   In other cases vouchers of the administrator for money paid out of the wife's estate for her funeral expenses were allowed, on the idea that the expenses were a necessity and that the husband was insolvent; and such claims have also been allowed in cases where the wife made testamentary provision for the payment of funeral expenses out of her estate.   Thus, in Williter *v.* Dobie, 2 Kay & Johns. 647, the wife made certain bequests in her will, to take effect " from and after payment of my just debts, funeral and testamentary expenses, and the expenses attending the execution of this my, will," and the payment of her funeral expenses was allowed out of her estate on the idea that the payment of the bequests could not be made until those expenses were paid.   Cases holding that a husband may be allowed credit in the settlement of his wife's estate for money paid for her funeral expenses proceed upon the same idea as those which allow a father who is the guardian of the property of his

minor child credit from the estate for expenditures for necessaries in the child's support where the father is unable to defray such expenditures. That a wife in this State may by will expressly provide for the payment of her funeral expenses out of her estate seems hardly open to doubt; but in the absence of such a testamentary provision we are clear that her estate can not be held liable for such a charge.

4. The evidence, in which there is practically no conflict, makes it clearly appear that credit for the materials the purchase-price of which is sued for was not given to Kenyon, either on his own account or as administrator of his deceased wife. The articles were furnished on the order of Mrs. Statham and on her contract to pay for them, with the further agreement that if she did not pay the bill her brother, York, would. Kenyon expressly declined to bind either himself or the estate which he subsequently represented as administrator. In Lucas *v.* Hessen, 13 Daly (N. Y.), 347, it was held that an executor is not liable to an undertaker for necessaries furnished by the latter for the funeral of his testator, although he may have assets of the estate sufficient to pay the claim, where the funeral was ordered by and the credit given to another person. This case is also authority for the proposition that the husband was liable primarily to the undertaker, but that under the New York statute he could recover from the executor of his wife's estate the amount so paid to the undertaker. "An executor is not liable to an undertaker or other person, although he may have sufficient assets of the estate, when the funeral was ordered by and the credit given to another person. But if the person ordering the funeral had a right to do so, he can recover from the estate." Perley on Mortuary Law, 83. The English authorities all adhere to this rule. In Jenkins *v.* Tupper, 1 H. Black. 90, it appeared that the wife died while her husband was abroad, and that her father directed and paid the expenses of her funeral. Upon his return the husband refused to pay the father, and suit was brought. It was held, all the Justices concurring, that under such circumstances a third person who voluntarily pays the funeral expenses of a wife, suitably to the circumstances and fortune of the husband, may recover from him the money so paid out. In Bertie *v.* Lord Chesterfield, 9 Mod. 31, the estate of the husband in his devisees was charged with the payment of the

funeral expenses of the testator's wife.     It is well to note, however, that the husband died after the funeral of the wife ; otherwise it might be supposed that this case was in conflict with that of Lawall v. Kreidler, 3 Rawle, 300.

From what has been said we conclude that on each of the grounds stated the petition showed cause for the issuance of the writ of certiorari; and that the judge erred in withholding his sanction.          *Judgment reversed. All the Justices concur.*