R. E. Gustin for use of Hiram H. Atwood, Appellee,
v. Eliza J. Bryden, Executrix, Appellant.

Gen. No. 6,359.

1. EXECUTORS AND ADMINISTRATORS, § 313*—*when award of execution improper.* An award of execution against an executor is improper.

2. HUSBAND AND WIFE, § 4*—*when liable for burial expenses of wife.* The duty of the husband to support his wife and to furnish her with necessaries, etc., includes the duty to give her remains suitable burial after her death, and such duty is not set aside by section 4 of the Administration Act (J. & A. ¶ 52), giving an executor, before probate of the will, authority to bury the deceased and pay necessary funeral expenses.

3. HUSBAND AND WIFE, § 4*—*what is effect of Married Women's Acts on liability of husband for funeral expenses.* The common-law liability of a husband for the funeral expenses of his wife has not been abrogated by the Married Women's Acts.

4. HUSBAND AND WIFE, § 4*—*what is effect of classification of claims against estate on liability of husband for funeral expenses of wife.* The common-law liability of a husband for the funeral expenses of his wife is not affected by the classification of claims against estates by which funeral expenses are provided to be paid as claims of the first class.

5. HUSBAND AND WIFE, § 4*—*when husband relieved from liability for funeral expenses of wife.* Where a husband paid the funeral expenses of his wife and sought to enforce the claim against the estate of the wife, and it appeared that the wife had in her last will charged her estate with the payment of funeral expenses, *held* that the husband was thereby relieved from liability, regardless of his common-law liability.

6. HUSBAND AND WIFE, § 4*—*what is effect of renouncement of husband under will on his liability for funeral expenses of wife.* Where a husband paid the funeral expenses of his wife and sought to enforce the claim against the estate of the wife, and had renounced under the will, *held* that by such renouncement the matter was placed in the same situation as if there had been no will, so as to render him liable for funeral expenses.

7. APPEAL AND ERROR, § 1387*—*when excluded evidence treated by Appellate Court as if admitted.* Where the renunciation by a

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Gustin v. Bryden, 205 Ill. App. 204.

husband under the wife's will was excluded by the trial court, on the trial of a claim of the husband against the estate for funeral expenses, and where it appeared that but for such renunciation the husband would, by the terms of the will have ·been relieved from his common-law liability to pay such expenses, and that the execution and filing of the renunciation was proven, and it was offered in evidence and was contained in the bill of exceptions, *held* that if it was competent evidence it should be treated by the Appellate Court as if it had been admitted.

8. HUSBAND AND WIFE, § 4*—*when husband taking assignment of claim for funeral expenses paid undertaker is not in position of undertaker.* Where a husband paid the funeral expenses of his wife and obtained an assignment from the undertaker, and then sought to enforce the claim against the estate of the wife, and by the terms of the last will of the wife she charged her estate with the payment of such expenses, but the husband renounced under the will, *held* that even if the estate had paid the claim to the undertaker it could have deducted the amount from the moneys going to the husband from his wife's estate, on the ground of his primary liability, and that therefore he could not, by paying the bill and taking an assignment, put himself in the position of the undertaker.

9. APPEAL AND ERROR, § 1803*—*when case not reversed and remanded for new trial because of erroneous exclusion of evidence.* Where the renunciation by a husband under the wife's will was excluded by the trial court, on the trial of a claim of the husband against the estate of the wife for funeral expenses, and where it appeared that but for such renunciation the husband would by the terms of the will have been relieved from his common-law liability to pay such expense, and that the execution and filing of the renunciation was proven and it was offered in evidence, but that its admission was refused, and it was contained in the bill of exceptions, *held* that, as it was competent evidence and should have been admitted, there should not be a reversal and remanding of the cause for a new trial merely to let in such renunciation, but that it should be treated as if it had been admitted by the trial court.

Appeal from the Circuit Court of Winnebago county; the Hon. ARTHUR H. FROST, Judge, presiding. Heard in this court at the October term, 1916. Reversed with finding of facts. Opinion filed April 19, 1917.

GEORGE P. GALLAHER and E. D. REYNOLDS, for appellant.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

LAWBAUGH & LARGE and B. JAY KNIGHT, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Mrs. Delia A. Atwood died testate on August 21, 1913. Her funeral was held on August 24, 1913. R. E. Gustin, an undertaker, furnished the casket, hearse, carriages, etc., and conducted the funeral and the burial. His bill therefor was $226. Hiram H. Atwood, husband of the deceased, paid the bill by his check on that day or the next. On November 10, 1913, a claim for said funeral expenses was filed in the County Court in the name of Gustin against the estate of Delia A. Atwood, deceased, except that the amount was stated at $233. On September 19, 1914, an assignment of said claim by Gustin to Atwood was filed in said County Court. Said assignment was dated August 25, 1913. On April 13, 1915, said claim of Gustin was disallowed by the County Court. Up to that time the record of the County Court, as now before us, contained no reference to the name of Hiram H. Atwood as a claimant, except in the assignment so filed. Gustin did not appeal from said judgment, but Atwood did appeal to the Circuit Court. In the Circuit Court said case was entitled "R. E. Gustin for the use of Hiram H. Atwood vs. The Estate of Delia A. Atwood." There was a jury trial and a verdict for claimant for $226. A motion by defendant for a new trial was denied, and Gustin, for the use of Atwood, had a judgment for $226 and costs, with an award of execution therefor. Thereafter the title of the cause was so amended as to make the name of the defendant "Eliza J. Bryden, executrix of the last will and testament of Delia A. Atwood, deceased." The order for an execution was erroneous. *Burnap v. Dennis*, 4 Ill. (3 Scam.) 478; *Dye v. Noel*, 85 Ill. 290; *Johnson v. Devine*, 192 Ill. App. 453.

Appellee concedes that at common law the husband was liable for his wife's funeral expenses, but contends that: (1) By virtue of the Married Women's Acts the common law on that subject is abrogated and the estate of the wife is primarily liable for her funeral expenses, and if the husband has paid those expenses he may recover from his wife's estate therefor; (2) that the provisions of the Administration Act, which make estates of deceased persons liable for their funeral expenses, make the estate of a deceased wife primarily liable therefor; (3) that because of the provision of the will of deceased, her estate is ultimately liable for said funeral expenses, and her husband can recover against her estate therefor; (4) that regardless of the statutes and the will, a husband is entitled to be reimbursed from his deceased wife's estate for her funeral expenses paid by him; (5) that the undertaker had a valid claim against the estate of deceased, and the husband, as his assignee, has the rights of the undertaker, and therefore has a valid claim, independent of all other considerations.

Most of the contentions of the parties to this suit are stated and leading authorities cited in 13 R. C. L., article "Husband and Wife," sections 230, 247 and 248, and in 21 Cyc. 1449, and notes.

*Cunningham v. Reardon,* 98 Mass. 538, is based upon the proposition that the husband is liable not only for the necessary support of his wife, but also for her funeral expenses. Afterwards in *Constantinides v. Walsh,* 146 Mass. 281, it was held that under statutes making the funeral expenses of a deceased person a preferred charge upon the estate of such deceased, and under statutes establishing the independent position of married women with regard to their property, the liability of the wife's estate is primary as between her estate and her husband, and that whether or not it was the husband's legal duty to see that his wife was buried he was entitled to recover against her estate

his reasonable expenditures in that behalf; that if it was his legal duty to bury her, still her estate was primarily liable under the statutes referred to, and if it was not his legal duty, still a stranger could have recovered against her estate therefor; and that in paying such funeral expenses it was not to be presumed that the husband waived his legal rights and made a gift to the estate of his wife, in the absence of any evidence to that effect. This was followed without discussion in *Morrissey v. Mulhern,* 168 Mass. 412. In *McCue v. Garvey,* 14 Hun (21 N. Y.) 562, it was held that the funeral expenses of a dead person were primarily chargeable to that person's estate; that though the husband was bound to bury his deceased wife, and was probably liable for the expenses of burial, still the estate of the deceased wife was finally liable therefor. In *Freeman v. Coit,* 27 Hun (34 N. Y.) 447, it was held that in that State, where the expenditures for the burial of the wife had been made by the husband, and the wife left a separate estate, the husband was entitled to be reimbursed therefor from such estate. In *Pache v. Oppenheim,* 93 N. Y. App. Div. 221, the common-law obligation of the husband to bury his wife was sustained, but it was held that under the authorities in that State the estate left by the wife is primarily liable therefor, and the husband who has paid such reasonable expenses may recover from his wife's estate. In *McClellan v. Filson,* 44 Ohio St. 184, the common-law duty of the husband to bury his wife was recognized, but it was held that the common-law right and power of the husband over his wife's property had been almost entirely taken away by legislation (which legislation in Ohio was there stated, and is in many respects similar to our statutes relating to married women), and that as the reason for the rule which placed upon the husband the liability to pay his deceased wife's funeral expenses had largely disappeared, the court was willing to see the rule itself dis-

appear. In that case the executor had paid the funeral expenses and the husband had taken no part in employing the undertaker. The court disclaimed any purpose of deciding what was not before the court, and stated that what they did hold was that the executor had a right to pay these funeral expenses from the estate of the testatrix, and be allowed therefor in his accounts.

The following cases do not harmonize with the foregoing: In *Waesch's Estate,* 166 Pa. St. 204, it was held that the liability of the husband for his wife's funeral expenses, even though she has a separate estate, is too well settled to admit of argument; that the husband is primarily liable, and the wife's estate is liable only if the husband is insolvent, and that, if any balance remains for distribution, the funeral expenses which the husband should have paid should be deducted out of his distributive share. In *Galloway v. McPherson's Estate,* 67 Mich. 546, it was held that where there was no showing but that the husband was able to pay his wife's funeral expenses, it was his duty to do so, and the wife's estate was not liable; and *Sears v. Giddey,* 41 Mich. 590, supports that position. In *Gould v. Moulahan,* 53 N. J. Eq. 341, it was held that payment of the wife's funeral expenses devolved upon the husband, not by virtue of any interest he has in his wife's property, but from the personal advantage to him that his wife be suitably buried; that while there was a primary obligation on the husband to pay said expenses, there was a secondary obligation upon her estate, and the existence of the primary obligation did not discharge the secondary obligation, and that where, as in that case, the husband was financially unable to pay said expenses, the wife's estate is liable. In *Stonesifer v. Shriver,* 100 Md. 24, it was held that at common law the legal existence of the wife was merged in that of the husband, and he became entitled

to all her personal estate, and as a consequence was bound to supply her with necessaries, and to bury her in a suitable manner; that statutes creating a wife's statutory estate do not absolve the husband from his common-law obligation to provide suitable burial for his wife, and that he is not entitled to any credit therefor in the settlement of his administration of her estate. In *Kenyon v. Brightwell,* 120 Ga. 606, it was held that at common law the husband was bound to bury his deceased wife and to defray her funeral expenses, and that this rule prevails generally in this country except in a few States which have prescribed a different rule by statute; that this duty to pay the wife's funeral expenses grows out of the husband's obligation to provide her with necessaries of life, and out of his authority to direct where she shall be buried; that statutes creating separate estates of married women, while they deprive the husband of rights at common law, do not absolve him from his duties at common law; that this common-law duty of the husband did not depend solely on the principle that marriage was a gift to the husband of the wife's estate, but that it was an obligation on the husband to whom the wife brought no portion as well as on him who received a fortune; that it was a consequence of the merger of the legal existence of the wife in that of the husband. A statute of that State required the husband to support and maintain his wife, and it was held this included the duty of burying her upon her death. In *Smyley v. Reese,* 53 Ala. 89, the husband was administrator of his deceased wife's estate, and claimed credit for the funeral expenses paid by him. Credit was refused. It was held that the statutes creating separate estates of married women did not absolve him from the duties the common law imposed; that it was his duty to provide her with necessaries, and that this duty was not solely dependent upon the common-

law rule that marriage was a gift to the husband of the wife's estate; that it was a consequence of the merger of the legal existence of the wife in that of her husband; that the wife was subject to and dependent on her husband, and that from that subjection and dependence arose a duty to maintain her, and that if she had a separate estate she was not compelled to pay for her necessaries therefrom, and the husband is not not thereby relieved from liability for such necessaries; that these necessaries include her reasonable funeral expenses which the husband is bound to pay, and, if he does not provide them, the person volunteering to pay them for her can recover the amount from him; that the husband has an indisputable and paramount right to dispose of the body of his deceased wife by decent burial in a suitable place, and has no equity in his wife's estate for such funeral expenses; that when the husband paid the funeral expenses of his wife he paid his own debt only and that he was not entitled to credit therefor in settlement of administration. In *Bowen v. Daugherty,* 168 N. C. 242, it was held that at common law the husband is liable for his wife's funeral expenses, and that generally the estate of the wife is not liable, except where such claim is enforced on equitable principles, where the husband is insolvent. A statute in North Carolina authorized the wife to contract as if unmarried, with certain exceptions. It was held that her funeral expenses were an indebtedness of the husband, and there was no reason under the statute why that debt should be imputed to the wife, although if the husband was insolvent, and payment from him could not be enforced, an equity might arise in favor of the creditor to collect from the wife's estate; but that except under such conditions the debt was that of the husband and enforceable against his estate. In that case the wife did not leave sufficient personal estate to pay her funeral expenses

and other debts, but did leave sufficient real estate to pay them, and the real estate of the wife was held not liable unless the husband was insolvent. Two opinions were filed, but both to the same effect. In *Carpenter v. Hazelrigg,* 103 Ky. 538, it was said that while the husband is bound in law to pay the funeral expenses of his wife, yet, if he fails to pay, her estate is liable. But it was held that, if the land she had devised to others was sold to pay these funeral expenses, her husband could be compelled to reimburse those to whom her estate passed. *Brand's Ex'r v. Brand,* 109 Ky. 721, was an action by the husband to reach one-half of his deceased wife's personal and one-third of her real estate. The executor, answering, set up that he had paid out of her estate the expenses of her last sickness and her funeral expenses, and that they should be retained by him out of whatever was otherwise payable to the husband. The statute provided that a husband should not be liable for his wife's debts beyond the value of the property he received from her by virtue of the marriage, but that he should be liable for necessaries furnished after marriage. It was held that the executor was entitled to retain, out of the funds coming to the husband from the estate, the amount paid for the necessary expenses of the wife's illness and burial. This was so held notwithstanding that the will of deceased, a certified copy of which has been exhibited to us, appropriated $1,000 for her funeral expenses and a monument over her grave. In the case entitled *In re Weringer's Estate,* 100 Cal. 345, it was held that at common law the husband was bound to bury his deceased wife and defray the necessary funeral expenses, and that this duty is involved in his obligation to maintain her while living, and that he has control of the body of his deceased wife, and must care for the same and select a proper place for interment, regardless of the wishes of her relatives. A like prin-

ciple was applied in *Mease v. Wagner,* 1 McCord (S. C.) 247.

Section 70 of our Administration Act (J. & A. ¶ 119) provides that all demands against the estate of any testator or intestate shall be divided into classes in the manner there prescribed, and the first class includes funeral expenses. It is contended that by virtue of this statute the estate of the wife becomes liable and the husband is exonerated. In *McClellan v. Filson, supra* (Ohio), the decision was in part based upon a statute which provided the order in which debts of a deceased should be paid, first among which were the funeral expenses. The same is true of the decision in *Constantinides v. Walsh, supra* (Mass). In *Buxton v. Barrett,* 14 R. I. 40, where the question was whether the funeral expenses of the wife should be charged against her estate or charged to the husband only, the court held they were properly chargeable against her estate, under a statute which provided that the estate of every deceased person should be chargeable with the funeral expenses of such deceased; and the court held that this included married women, and that whether the husband was also liable was not material. In the case entitled *In re Johnson,* 15 R. I. 438, there had been a judgment against a husband for his deceased wife's funeral expenses, but the husband was insolvent and the judgment was not satisfied, and there was an action by the administrator to sell the interest of the wife in certain real estate to pay those funeral expenses, and it was held that her estate was liable for those funeral expenses notwithstanding she left a husband, and that her liability had not been extinguished by an unpaid judgment against her husband. In *Moulton v. Smith,* 16 R. I. 126, the husband paid the funeral expenses and the suit was to reach the deceased wife's personal estate in favor of the administrator of the husband's estate, the husband having subsequently

died, to recover said funeral expenses. It was held that the funeral expenses should be paid out of the wife's estate because of the statute which made the estate of every deceased person chargeable with the funeral expenses so far as the estate was sufficient therefor. In *Schneider v. Breier's Estate,* 129 Wis. 446, which was a claim by the husband against his wife's estate for her funeral expenses paid by him, the court cited the statute which provided the order in which the debts of deceased persons should be paid, the first of which was the necessary funeral expenses, and held that thereby the Legislature intended to include the estates of married women who left separate property, and that under this statute the estate of the wife was primarily liable for these expenses, and that the claim would be enforced against the wife's estate without regard to the liability of the husband. On the other hands, in *Kenyon v. Brightwell, supra* (Ga.), where the question was as to the liability of the husband to defray his deceased's funeral expenses, the statute provided the order in which the debts of a decedent should be paid, and the second item was funeral expense, and it was claimed that by this statute the common-law rule had been abrogated, and the estate of every decedent is liable for funeral expenses. It was held that this statute merely provided the priority to be observed in the payment of debts of a decedent, and that unless expressly made so by statute or by the provisions of the wife's will, funeral expenses of a wife who leaves a husband surviving are not a debt of her estate. Another statute in that State bound the husband to support and maintain his wife, and it was held that this included the duty of burying her upon her death. In *Bowen v. Daugherty, supra* (N. C.), a statute provided the order in which claims should be paid in the administration of estates, and put funeral expenses in a certain class. It was held that this was only designed to recognize priori-

ties among the creditors, and to establish the order of payment between claimants who had valid debts against the estate and was not intended to create a liability which did not otherwise exist.

Similar questions have been discussed by our Supreme Court. In *Rea v. Durkee,* 25 Ill. 503, in an action against a husband for goods furnished his wife when she was living separate from him, it was held that the law imposed the duty upon a husband of furnishing the wife with all articles necessary and suitable to his degree and condition in life; or, as said in another place, all the necessaries suitable to his position in society and his means. In *Martin v. Robson,* 65 Ill. 129, which was after the passage of the Married Women's Acts of 1861 and 1869, it was held that since the husband no longer receives the wife's estate he is not liable for her torts. The effect of those acts is there discussed at length. But it is there said that certain duties and obligations still exist, and after stating what obligations the wife still has to her husband, it is further said that the husband is still bound to protect and maintain his wife, and that these duties and obligations upon husband and wife are not the result of the arrangement of their property at common law, but of the contract of marriage and the relation thereby created. It is there said that by the marriage she became one of his family, and he was bound to provide her a home and necessaries from a principle of duty and justice, and that the duties of the wife while cohabiting with her husband form the consideration of his liability for these necessaries. In *Douglas v. Gausman,* 68 Ill. 170, in discussing the effect of the Married Women's Acts, it is said that that law has greatly enlarged the rights of married women, but has not, perhaps with a few exceptions, relieved the husbands from any of their marital duties, and that he is still left to support his wife so long

as she remains with him and discharges her duties. In *Bevier v. Galloway,* 71 Ill. 517, a suit by a physician against a husband for medical services rendered to a wife who had left her husband without his knowledge or consent and was living apart from him without just cause, and where for those reasons he was held not liable, it was again stated that the law requires the husband to maintain his wife and furnish her with all necessaries suitable to his condition in life. In *Phelps v. Phelps,* 72 Ill. 545, the court speaks of the right of the wife to support during marriage. In *Hackett v. Smelsley,* 77 Ill. 109, which was a suit by a wife against certain persons for loss of her means of support by sale of liquor to her husband, thereby causing his intoxication, which cause of action arose after the Married Women's Acts referred to, it was said: "From the earliest period of the law there has been a legal obligation on the husband to support his wife. No act of the Legislature of this State, when this alleged cause of action accrued, had ever abrogated such law. It has never been annulled by judicial construction, nor do we recognize in courts the right so to annul it." And again: "A wife is being supported by her husband—is entitled to be so." And again: "This right of support is not limited to the supplying of the bare necessaries of life, but embraces comforts, what is suitable to the wife's situation and the husband's condition in life." In *Mensinger v. O'Hara,* 189 Ill. App. 48; it is held that a husband may maintain an action against an undertaker for an intentional mutilation of his deceased wife's remains, and that seems to be based upon his right to the possession and control of the dead body for the purpose of giving it burial. We understand that the duty of the husband to support his wife and to furnish her with necessaries, etc., includes in that term the duty to give her remains suitable burial after **her**

death. Nor do we understand that this duty is set aside by the provisions of section 4 of the Administration Act (J. & A. ¶ 52), giving an executor, before probate of will, authority to bury the deceased and pay necessary funeral expenses. Although the decisions above cited in Illinois do not expressly refer to funeral expenses, we are of opinion that they indicate that in the view of our Supreme Court the enactment of the Married Women's Acts does not relieve the husband of the duty primarily cast upon him by the common law to give his wife's remains suitable burial, and that the views of our courts are in harmony with the general line of authority above cited from other States. Section 21 of the chapter entitled "Wills," in force July 1, 1827, Revised Laws of Illinois of 1833, begins as follows: "All demands against the estate of any testator or intestate shall be divided into classes in manner following, to-wit: 1st. All funeral and other expenses attending the last sickness shall compose the first class." Exactly the same provision is embodied in section 115 on the subject of "Wills" in the Revised Statutes of 1845. The same language in substance is contained in section 70 of the Administration Act of 1872, and is continued in said section as it has since been amended (J. & A. ¶ 119). It follows that this classification of claims against estates, by which funeral expenses are provided to be paid as claims of the first class, has been in force in this State at least ever since July 1, 1827, and was therefore in force long before the Married Women's Acts were adopted, and has been continued in force ever since without change. We are of opinion that the purpose should not be imputed to the Legislature to relieve the husband of his common-law liability to pay the funeral expenses of his deceased wife, by reason of this language, which has been continued in force in this State without change for about ninety years; but

on the other hand, that these statutes relate only to the priority of claims as between different creditors of the estate of any deceased person, and were not intended in any way to relieve the husband of the primary liability which the common law cast upon him.

The will of Delia A. Atwood and the codicil thereto were in evidence. After certain special gifts, the fourth paragraph of the will charged upon the residue of her estate the payment of her debts and funeral expenses and costs of administration. It is contended that by this will the husband was relieved of liability for said funeral expenses, regardless of the common-law duty resting upon the husband to pay the same. In *Willeter v. Dobie,* 2 Kay & Johnson 647, a case decided in the English high court of Chancery in 1856, where there was a similar provision, it was held that by her will she had charged her funeral expenses on the residue of her separate estate, and that her husband was entitled to repayment of the funeral expenses out of that residue. In *Kenyon v. Brightwell, supra* (Ga.), reference was made to a Maryland case holding that the wife may by will expressly provide for the payment of her funeral expenses out of her estate, and that conclusion was approved and held not applicable in a case where there was no such will. In *Babbitt v. Morrison,* 58 N. H. 419, it was held that under the statute enlarging the common-law rights of a married woman, she had power to charge her separate estate with the payment of her husband's debts. It would therefore seem that Mrs. Atwood had power to charge the payment of her funeral expenses upon her separate estate by her will, and she undertook to so charge them. But the executrix proved that the husband executed a renunciation of this will, prepared by his attorneys, and filed the same in the County Court in the estate within four months after his wife's death. The court below refused to admit the renun-

ciation in evidence, but its execution and filing were proved, and it was offered and is contained in the bill of exceptions, and as it was kept out on the objection of appellee we are of opinion that if it was competent evidence we should treat it as if it had been admitted. It is contended that Atwood did not in express terms renounce this provision for the payment of his wife's funeral expenses out of her estate. This is a misapprehension of the language of the renunciation. It sets out in full the fourth provision of the will, and then proceeds to say that he does not accept such provision, and that he hereby renounces the said provision, etc. The statute, section 13 of chapter 41 of the Revised Statutes (J. & A. ¶ 4249), entitled "Dower," provides that such a renunciation shall operate as a complete bar to any claim which said surviving husband may afterwards set up to any jointure, devise, testamentary provision or dower thus renounced. Atwood thereby renounced the testamentary provision by his wife that her funeral expenses should be paid out of her estate, and he takes in lieu thereof whatever the statutes give him. He cannot renounce the will and at the same time take any benefit under the provisions which he has renounced. Therefore this case stands here in the same position as if there had been no such testamentary provision in the will.

Gustin, the undertaker, charged this bill on his day book, where the items are given, to the husband under date of August 24, 1913, which was the day of the funeral. On the same day, on the same book, he credited the husband with payment therefor. On his ledger, which did not contain the items and obviously must have been made after the entries in the day book, he charged the total amount to the estate of Delia A. Atwood as of August 25th, and credited the payment as having been made on August 25th instead of August 24th. There was no proof that this will was

admitted to probate, or that defendant assumed the
duties of executor, but those matters seem to be as-
sumed, and we assume them to be true.  There was no
proof that Mrs. Atwood left any estate, except the
language of her will purporting to dispose of prop-
erty.  There was no proof that the husband was
insolvent.  The claim was filed in the name of Gus-
tin, and he signed the affidavit attached thereto.
Atwood testified that he took the assignment from
Gustin at the same time that he paid the bill, and
that that was a part of his arrangement with Gus-
tin.  This payment was on August 24 or 25, 1913.
The assignment bears the date of August 25th, but
was not filed in the County Court until September 19,
1914, more than a year thereafter.  The appeal bond
by which Atwood removed the case to the Circuit
Court recited, among other things, that Atwood pro-
cured this assignment from Gustin on September 19,
1914.  If this assignment had been procured on Au-
gust 25, 1913, it would seem to be probable that when
this claim was filed in the Probate Court on Novem-
ber 10, 1913, it would either have been filed as the
claim of Atwood, or as the claim of Ralph E. Gustin
for the use of Hiram H. Atwood, but this was not
done.  Nothing appeared in the record of the County
Court before us to show that Atwood was interested
in the claim before it was disallowed, except the fact
that this assignment was filed in the County Court
more than a year after the filing of the claim.  Atwood
swears that he did not order the funeral goods and
services of the undertaker, although he testified that
to his personal knowledge each of those items were
furnished by Gustin in the interment of his wife.
Mrs. Mercy M. Henry, the only surviving sister of
Mrs. Atwood, and who was with her for several weeks
before her death and at the time of her death and at
the funeral, testified that Atwood did make the ar-

rangements with the undertaker for the funeral. No doubt if Atwood had not paid these funeral expenses Gustin would have had a lawful claim against her estate therefor, but under the authorities we have above cited, we conclude that if the estate had paid the claim it could have deducted it from the moneys going to Atwood from his wife's estate on the ground that it was in this State his primary liability.

We are of opinion that we ought not to reverse and remand the case for a new trial merely to let in said renunciation, but that the renunciation and proof of its execution and filing being in the record, we should treat it as if it had been admitted. We therefore conclude that under the proofs in this case the husband could not, by paying the bill and taking an assignment of the claim, put himself in the position of the undertaker, but that as this was his primary liability, he should be treated as having paid the same and as suing the estate therefor in his own name, and we hold that he cannot recover therefor. The judgment is therefore reversed.

*Reversed with finding of facts.*

Finding of facts to be incorporated in the judgment.

We find that the claim here sued for was paid by the husband of Mrs. Atwood, and that thereafter this claim was prosecuted in the name of the undertaker for the use of said husband, and that said indebtedness was a primary liability of the husband and not of the wife's estate, and that he having paid the same cannot recover therefor against the wife's estate under the proofs in this case.