GEORGE C. APOSTLE, Doing Business under the Firm Name and Style of GEORGE C. APOSTOLOPOULOS, UNDERTAKER, Plaintiff, *v.* LOUISE PAPPAS and Others, Defendants.

Supreme Court, New York County, January 27, 1935.

*I. Reines Skier,* for the plaintiff.

*Imre M. Schwarz,* for the defendant Louise Pappas.

*Frank, Weil & Strouse* [*Samuel F. Frank* of counsel], for the defendant Thomas Pappas.

LAUER, J. The plaintiff herein is engaged in the business of an undertaker. He seeks to assert and foreclose an alleged lien upon a policy of life insurance in his possession which insured the life of Christ Pappas, the deceased husband of the defendant Louise Pappas, who was the beneficiary named in this policy. At the time of the death of Christ Pappas his widow was in Greece. She did not return to this country until several weeks thereafter. In this interval the defendants Thomas Pappas and Louis Pappas, brothers of the deceased, having failed to hear or to receive instructions from the defendant Louise Pappas regarding the burial of her late husband, requested the plaintiff herein to arrange for and carry out the burial of the decedent and delivered to the plaintiff the policy of insurance on which the lien is asserted. The plaintiff, pursuant to these instructions, performed the services for the burial and furnished, among other things, a casket valued at $500, twenty-two limousines and two flower cars. The defendant Louise Pappas, on her return to the United States, disclaimed responsibility for any indebtedness to the plaintiff for the services rendered in the burying of her deceased husband. The plaintiff claims that the value of the funeral services and expenses was $1,540. The jury rendered a special verdict, which in effect determined that the plaintiff's charges were reasonable and consistent with the decedent's station in life. There was reserved the question whether the defendant Louise Pappas personally was under any legal obligation to pay the plaintiff for the funeral expenses incurred in the burial of the decedent. This is the question now to be determined.

An examination of the law of this State has failed to disclose a precedent in point. The law is well settled that in the absence of a testamentary direction on the part of a deceased, the right to the possession of the dead body for the purpose of preservation and burial belongs to the surviving husband or wife or next of kin. The rule is subject to modification, depending upon the peculiar circumstances in each case. (*Birch* v. *Birch,* 123 Misc. 229, and cases there cited; *Matter of Billman,* 143 id. 765; *Gostkowski* v. *Roman Catholic Church, etc.,* 262 N. Y. 320.)

The paramount right to control the burial of a deceased is in the surviving spouse, subject to modification if peculiar circumstances exist. (*Stiles* v. *Stiles*, 113 Misc. 576; *Gostkowski* v. *Roman Catholic Church, etc., supra.*) If this right is not exercised, it may be lost to the person primarily entitled to it and pass to someone else. (*Henry* v. *Vintschger*, 234 App. Div. 593; *Stiles* v. *Stiles, supra.*)

Is the separate estate of a surviving spouse subjected to liability to pay for the funeral expenses incurred in the burial of the deceased spouse? There is no question that a husband at common law was under a legal obligation to bury his deceased wife and was liable for the funeral expenses incurred. (*Jenkins* v. *Tucker*, 1 H. Bl. 90.) Furthermore, if the husband failed to perform his duty, he was liable in an action to recover the reasonable value of its performance by any person who, on account of his absence or neglect properly incurred the expense of the necessary burial. (*Watkins* v. *Brown*, 89 App. Div. 193, 194; *McCue* v. *Garvey*, 14 Hun, 562; *Patterson* v. *Patterson*, 59 N. Y. 574, 583.) This liability of the husband " is sometimes placed in whole or part on the ground of common decency; but it is generally deemed to be included in, or to be incident to, or to grow out of, the duty to support and maintain the wife while living and to furnish her with necessaries." (30 C. J. 606.) (*Gustin* v. *Bryden*, 205 Ill. App. 204; *Beverly* v. *Nance*, 145 Ark. 589; 224 S. W. 956; *Matter of Weringer*, 100 Cal. 345; 34 P. 825; *Kenyon* v. *Brightwell*, 120 Ga. 606; 48 S. E. 124; *Cunningham* v. *Reardon*, 98 Mass. 538; *Smyley* v. *Reese*, 53 Ala. 89; 13 R. C. L. 1213.)

No obligation by the wife to furnish necessaries to her husband existed at common law. Thus, it has been held that a married woman is not liable for medical services rendered to her husband and/or the family unless she has bound her separate estate by express agreement for the payment of such services. (*Hazard* v. *Potts*, 40 Misc. 365; *Richards* v. *Young*, 84 N. Y. Supp. 265.)

No obligation to pay for the funeral expenses of her husband can be fixed upon the widow if the authority of the law, as it has been expressed in decisions heretofore rendered, is to be accepted. The courts of other jurisdictions have refused to impose this liability upon the widow. (*O'Hagan* v. *Fraternal Aid Union*, 144 S. C. 84; *Compton* v. *Lancaster*, [Ky.] 114 S. W. 260; *Hayden* v. *Maher*, 67 Mo. App. 434; 13 R. C. L. 224, p. 1193; 30 C. J. 609; note, 18 Ann. Cas. 856; Schouler, Marriage, Divorce, Separation and Domestic Relations [6th ed.], vol. 1, § 114, p. 139.) And this has been held, despite the fact that the widow requested the services of the undertaker, in the absence of a direct promise on her part to pay for the services. (*Hayden* v. *Maher, supra.*)

In this State the estate of the decedent is unquestionably liable for the reasonable funeral expenses of the deceased (*Lucas* v. *Hessen*, 13 Daly, 347; *Matter of Billman, supra*), and a preference is given to this indebtedness over all others as a debt of the estate. (Surr. Ct. Act, § 216; Dec. Est. Law, § 176.) Where a decedent who was married leaves an estate sufficient to pay the expenses of burial, the surviving spouse has the right to recover from the estate the amount paid by him or her to the undertaker, if it is reasonable. (*Lucas* v. *Hessen, supra; McCue* v. *Garvey, supra; Freeman* v. *Coit*, 27 Hun, 447; *Watkins* v. *Brown, supra; McNally* v. *Weld*, 30 Minn. 209; 14 N. W. 895; *Matter of Billman, supra*.) The wife's private estate is not chargeable with the expense of burial under such circumstances. (*Matter of Huth*, 88 Misc. 458.)

It appears, therefore, from these authorities that an undertaker must look to the estate of the deceased for the payment of his services and has no relief against the widow of a deceased for the decedent's funeral expenses in the absence of an express promise or agreement on her part to pay for them. The question now presented is whether this court should accept the law as it has been found in other jurisdictions, which holds that a widow in the absence of an express promise may not in any case be charged with funeral expenses of her deceased husband. I think not. Where the question is one of general jurisprudence, decisions rendered in another State if in point may be entitled to respectful consideration if well reasoned, promotive of justice, and well supported by the general current of authority, but they are not technically of force as precedents. Such decisions may be followed, if the court hearing the cause approves their reasoning and conclusions, but the court is at perfect liberty to disregard them. (Black Law of Judicial Precedents, p. 401; 26 Am. & Eng. Ency. of Law [2d ed.], p. 162; *Boyce* v. *City of St. Louis*, 29 Barb. 650, 654.)

Since no precedent in *this* State has been found in point, this court is not bound to adhere to the decisions rendered in other jurisdictions. The liability of a widow for her husband's funeral expenses should, therefore, be examined on principle and in the light of the circumstances and conditions of present-day society.

With the present-day tendency to emancipate women completely and confer on them rights which heretofore have been denied, it may well be said that their obligations to some extent have increased and in other respects ought to be increased. It must be recognized that the conditions and times of the twentieth century are different from those which existed in the days of Coke, Blackstone and Littleton. The status of women during the seventeenth, eighteenth and nineteenth centuries and today is as radically different as the

times. Broadly speaking, it was the view of the law in the middle of the eighteenth century that the property of a woman became her husband's on marriage, that her body belonged to him, that he could restrain her liberty at his pleasure, and that he could administer physical correction at his discretion, subject, of course, to the rule of moderation. The law was concisely stated in Bacon's Abridgment in these words: "The husband hath by law power and domination over his wife." She was his creature and his possession. She was debarred from the suffrage. She was excluded from the professions. She was restricted and controlled in many ways. Today the position of woman has undergone a revolutionary change. Her property is now her own. She can exclude her husband, with very few limitations, from enjoying any part of it. It is recognized that her body is not her husband's, but her own. The husband cannot restrain her physical liberty. He cannot administer any physical punishment. She possesses political rights. Practically all professions are open to her. Her freedom of occupation can no longer be restricted by him. In many instances women are earning greater wages than their husbands. There is merit in the argument that the law should recognize a legal duty upon the "modern woman" to contribute to the necessaries of the family, such as medical expenses if her husband is unable to, and to bury him if his estate is incapable of doing so.

It is a chief concern of the public that the dead have a decent burial, not merely because the statutes provide therefor (Penal Law, § 2211; Public Welfare Law, § 154), but also because some adequate disposal of the body is essential to the preservation of the public health, and a decent burial is dictated by a proper public sentiment and respect for the dead. (*Matter of Kulyk*, 150 Misc. 307.) As has been stated by our Court of Appeals in the case of *Patterson* v. *Patterson* (*supra*, at p. 585): "The decent burial of the dead is a matter in which the public have concern. It is against the public health if it do not take place at all (*The Queen* v. *Stewart*, 12 Ad. & Ell. 773), and against a proper public sentiment that it should not take place with decency. (*Kanasan's Case*, 1 Greenl. 226; see *Jones* v. *Ashburnham*, 4 East, 460; *Regina* v. *Fox*, 2 Q. B. 246.)"

The law has created certain rights and privileges in and to the body of a deceased which go with the right to bury a deceased. These rights include, among others, the right to sue for damages if the body is violated before burial (*Foley* v. *Phelps*, 1 App. Div. 551), or interfered with after death (*Gostkowski* v. *Roman Catholic Church, etc., supra*). These rights carry with them the obligation to bury the dead (*Matter of Kulyk, supra*), unless special circum-

stances exist. We have seen in the case where the deceased is married that the duty of burial ordinarily devolves upon the surviving spouse. (Weinman, A Survey of Law Concerning Dead Human Bodies [1929], p. 22; *Gostkowski* v. *Roman Catholic Church, etc., supra.*) Where the estate of the deceased is incapable of paying for the funeral expenses, this duty of burial places upon the surviving spouse a liability for the reasonable funeral expenses incurred to give the deceased a decent burial. This is so in so far as the husband is concerned, whether we base the husband's liability on the ground of common decency and public policy or on the theory of necessaries. It would appear to be equally sound in its application to the widow and it is unnecessary to resort to technical analogies basically founded on an obligation to furnish necessaries in order to support it. It would seem that the reasonable funeral expenses to decently bury a woman's deceased husband, where his estate is incapable of paying for them, should be chargeable against her own separate estate, if adequate, as an obligation imposed by law which arises out of the rights and duties inherent in and to the marital status and from a public policy to decently bury the dead. The imposition of this obligation upon a surviving wife, especially in her present-day emancipated status, is certainly no greater than the obligation imposed by the common law, which provided " that the individual under whose roof a poor person dies is bound to carry the body decently covered to the place of burial." (*The Queen* v. *Stewart*, 12 Ad. & El. 773; 113 Eng. Rep. [K. B.] 1007.)

Assuming, therefore, that a woman is under obligation to provide for the disposition of the body of her deceased husband where his estate is inadequate, the question then arises, to what extent is her personal estate financially bound? There is no public concern in the disposal of the body except to see that it is decently done. At common law we have seen it was provided that it was the duty of him under whose roof the body of a deceased poor person lay, to carry it, *decently covered,* to the place of burial. (*The Queen* v. *Stewart, supra.*) Concomitant with the right of burial is the right to determine the manner and place of interment, subject to special circumstances. (*Birch* v. *Birch, supra; Matter of Richardson,* 29 Misc. 367; *Johnston* v. *Marinus,* 18 Abb. N. C. 72.) There is no obligation upon a widow to pay for the funeral expenses to bury her deceased husband with pomp and ceremony or in the style his position in life might have seemed to indicate to others, where his estate is incapable of paying for it.

In the instant case the defendant Louise Pappas had no knowledge of, and gave no consent to, the elaborate funeral prepara-

tions made for her deceased husband by his brothers. It would seem that if she is to be charged with the expense thereof, it is imperative to show that the estate of the deceased was inadequate to pay for his funeral expenses and that the widow actually or impliedly agreed to be liable for the expenses incurred for the funeral arrangements. The plaintiff has failed to prove this. Under these circumstances the defendant Louise Pappas herein cannot be held liable to the plaintiff for the elaborate funeral ordered by the brothers of her deceased husband. While a casket for the sum of $500, twenty-two limousines and two flower cars as items of funeral expenses might have been reasonable expenditures, if judged by the decedent's position in the community, to impose the burden upon the defendant to pay for them would be to impose an obligation greater than the obligation to bury her deceased husband decently. The brothers of the deceased in her absence ordered the funeral, made the arrangements and sought to throw the burden of paying for this elaborate funeral on the wife of the deceased by giving to the plaintiff as collateral security a life insurance policy in which the defendant Louise Pappas was named as beneficiary.

In the instant case the plaintiff did not receive the policy from or pursuant to the directions of the defendant Louise Pappas and the plaintiff never obtained and has no lien on the policy which can be foreclosed even if he might have a cause of action against the widow of the deceased for such sum as would be required to give her deceased husband a decent burial. Entertaining these views it follows that there must be judgment for the defendant Louise Pappas.