In the Matter of the Estate of MARGARET WOLPERT, Deceased.

Surrogate's Court, Monroe County, May 9, 1940.

*Goodwin, Nixon, Hargrave, Middleton & Devans* [*A. W. Dunbar* of counsel], for the administrator.

*Simon Malone*, for the claimant.

*A. Milanetti*, special guardian.

FEELY, S.   Decedent and her husband were both injured in the same accident, and taken to a hospital, where he died two weeks before she did.   Her son-in-law, without having made known to her that her husband had passed away, ordered the funeral of the husband from the claimant funeral director at a cost of $304. The widow then died without having been informed of those facts.

The intestate husband's estate consisted only of a W. P. A. check for $26.77, which has been applied on the expense of his burial.   The widow's gross estate amounted to $1,474, of which $717 came from a policy of insurance on his life, made payable to her.   The rest came from insurance she had on her own life, made payable to her estate.

The question now presented is whether her administrator was justified by law in rejecting the claim made on the widow's estate for the expense of the burial of her husband, on the ground that neither she nor her estate was under any legal obligation to bear

the expense of burying her husband. The claimant bases his argument on the modern legislation charging the relatives of an indigent person with the latter's support, and on the laws that bettered the common-law status of married women. No case squarely in point has been cited which upholds the claim now made.

Even after the statutes had given to married women the exclusive use and ownership of their own separate property, and had enabled them to do business and to enter into contracts as if they were unmarried, the rule became established and still prevails today that the husband, or his estate, could recover from the wife's estate the amount he had paid for her funeral (*Matter of Stadtmuller*, 110 App. Div. 76), on the theory her estate was primarily liable therefor where his mere ordering of it had not gone beyond the range of the usual marital agency and thus had become a special promise to be personally liable; and so, conversely it follows that her estate could recover from his estate whatever she or it laid out to defray his funeral expenses, in the absence of a like express promise to be individually responsible therefor. (See *Hoffman* v. *Kanze*, 7 Misc. 237; *Lucas* v. *Hessen*, 17 Abb. N. C. 271; *Hazard* v. *Potts*, 40 Misc. 365.)

As for other jurisdictions, " the better rule deduced from the cases," gathered in the annotation on *O'Hagan* v. *Fraternal Aid Association* (144 S. C. 84; 57 A. L. R. 400), " seems to be that, in the absence of statute, there is no liability imposed on the wife, by reason of her marriage relation, for her husband's funeral expenses." (Id.) In so far, therefore, as the present claim is based on the " married women's acts " it is without support in any ruling where the question arose as a matter of law between the estates of the spouses, or between the survivor and the estate of the spouse predeceasing.

However, as between the surviving spouse, or the latter's estate, on the one hand, and the neighbors or taxpayers on the other hand, the difference in the situation is reflected in statutes which place on an individual basis the liability for the reasonable cost of burying a predeceased spouse in case the latter left either no means, or property insufficient to provide a decent burial. The cases of special promise are not in point. A widow who ordered and expressly agreed to pay for the funeral of her indigent husband was obviously liable therefor out of her own means. (*Weil* v. *Schneider*, 154 Misc. 797.) The only case on statutory liability which has come to the court's attention herein is *Matter of Vosburg* (167 Misc. 611), arising under the recent amendment of section 200 of the Surrogate's Court Act, whereby the minimum

of the property, generally protected by that section from the creditors of the deceased in order to enable the surviving spouse or minor children to carry on as a family, must yield out of its $300 of exempted cash, or of its substitute in other property, enough to make up any shortage of the decedent's assets to pay the latter's "reasonable funeral expenses." There the indigent decedent, living apart from his second wife, died in the home of his daughter, who called in the funeral director. The reasonableness of the latter's bill of $315 was not questioned in court. Decedent's assets fell short by $175.61 of paying for his burial. The court rightly decided the cash exemption should be applied before resort could be had to the individual resources of the daughter. This decision must be understood to limit to the matter of statutory exemption the statement made by the surrogate (p. 613) to the effect that " In the absence of a contract otherwise, certainly the legal liability for the cost of decedent's funeral expenses in the event of a deficiency in his estate is primarily on the surviving spouse and not on the children " to whom nothing was passing from his insolvent estate.

Support for this claim is sought in analogies and in *obiter dicta* which derive from the public welfare statutes that impress generally upon relatives of an indigent person the obligation of the latter's support in order to save the taxpayers from unjust imposition. These welfare laws deal more specifically with funeral expenses than they do with support. One section provides that out of life insurance on the deceased indigent the public welfare official may claim as preferred the sum of $125 for funeral expenses (Pub. Welfare Law, § 129); and another section fixes $75 as the amount of funeral expenses one district may· charge against the district of settlement of the indigent who was uninsured.

In the case of an indigent veteran, $100 is the extent of the public contribution for his funeral, and $75 for a headstone.

Were it not for the public policy of saving the taxpayers from burying this decedent at the above costs, this widow's estate would not be liable, as a matter of law, for any part of the funeral expenses of her husband. Until the Legislature sees fit to act on this statutory matter, why should the widow's legal freedom from liability be cut down, without her consent, to any greater extent, on the score of her husband's indigence, than the public recognizes as the reasonable cost of burying such an indigent? Her estate, in the circumstances of this case, is responsible only in so far as is necessary to protect the public from paying for his burial. Giving the claimant the most favorable interpretation of the present law, the estate of this widow is liable to the funeral

director only for the difference between $125 and the $26.77 paid by the W. P. A. check credited on the account, to wit, for $98.23.

Claimant argues that this insurance was carried out of the earnings of the deceased husband; and that the proceeds will pass to this decedent's children by a former marriage. Assuming such to be the fact, although there is no evidence thereof in this record, one of these children is the wife of the person who ordered the funeral in question. However, the matter is not one to be decided on " equities." In the *O'Hagan* case (*supra*) the court held that the widow, though named as beneficiary in insurance policies in the life of her husband, could not be compelled to apply the proceeds of them in payment of his funeral expenses, for which she did not contract, and of which she had no knowledge.

The broad statements as to the " reciprocity " expected from the new woman, quoted by claimant from the opinion in *Apostle* v. *Pappas* (154 Misc. 497), are clearly *obiter dicta* there; and are more properly for legislative consideration. To some extent they echo remarks made nearly a century before in *The Queen* v. *Stewart* (12 Ad. & E. 773), which must be read in the light of the decision there made, where both spouses were paupers, and she went out of her parish into the hospital where she died. The hospital was denied a mandamus to the overseers of her parish, without passing on the latter's freedom from statutory liability, but upon the common-law ground that, as the death had occurred " under the roof " of the hospital, this fact entailed on the institution the duty to carry the body, " decently covered," to the parish cemetery. As compared with this obligation imposed by common law, one of the judges there said arguendo that no greater obligation would be imposed " upon the surviving wife, especially in her present day emancipated status "— (1840) — if she were held liable to bury her indigent husband by virtue of " an obligation imposed by law which arises out of the rights and duties inherent in and to the marital status and from a public policy to decently bury the dead."

The rights and duties arising out of the relation of marriage are so extensively under the control of the State Legislature that any such changes in the established rule as are contemplated by the dicta quoted by the claimant must be sought at the hand of the lawmakers, rather than that of a court.

Enter the decree of judicial settlement framed in accord with this decision, awarding $98.23 to the claimant funeral director, without prejudice to the latter's rights against others for the balance.