## KENNEDY v. BRODERICK.

### (Circuit Court of Appeals, Seventh Circuit. June 15, 1914.)

### No. 2090.

BILLS AND NOTES (§ 166*)—NEGOTIABLE INSTRUMENT—TWO INSTRUMENTS IN ONE.

Defendant executed a note containing over his signature an absolute promise to pay a specified sum 90 days after date at a specified bank, waiving demand, protest, and notice of nonpayment, and declaring that certain securities delivered to the payee had been pledged as collateral security. At the left of the signature was a provision that the collateral was of the market value of $5,500, that if the collateral depreciated the payee might demand additional security or mature the note at once, and that any assignment of the note should carry all rights to the collateral, and that the payee or assignee might sell the collateral at public or private sale. *Held*, that such provision amounted to a separate contract of pledge and, though written on the note, did not detract from its negotiability.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 418, 421; Dec. Dig. § 166.*]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois; George A. Carpenter, Judge.

Action by William Broderick against Walter B. Kennedy. Judgment for plaintiff, and defendant brings error. Affirmed.

Kennedy signed and delivered to Purse a written instrument, of which the following is a copy:

"Kansas City, Mo., June 5, 1911.

"$4,000.00 No. ......

"Ninety days after date, for value received, I promise to pay to the order of W. D. Purse, four thousand and no/100 dollars, at National Bank of Com-

merce, Kansas City, Mo., with interest from maturity until paid, payable annually at the rate of six per cent. per annum, and if not so paid, compounded. Demand, protest and notice of nonpayment of this note is waived by both makers and indorsers hereof. To secure the payment of this note, securities herewith delivered to the payee, are pledged as collateral security.

"W. B. Kennedy.

"The above collateral has a market value of $5500. If, in the judgment of the holder of this note, said collateral depreciates in value, the undersigned agrees to deliver when demanded additional security to the satisfaction of said holder; otherwise this note shall mature at once. Any assignment or transfer of this note, or other obligations herein provided for, shall carry with it the said collateral securities and all rights under this agreement. And we hereby authorize payee or his assigns or the legal holder hereof, on default of payment of this note or any part thereof, according to the terms thereof, to sell said collateral or any part thereof, at public or private sale and with or without notice and by such sale the pledgor's right of redemption shall be extinguished."

In the original document the part shown in the copy above Kennedy's signature was printed in large type, and the part below the signature was printed in small type in the lower left corner of the paper, so that the signature in the lower right corner was below the large-type matter and opposite the small-type matter. Both parties of course agree that Kennedy intended to be bound by all the agreements and stipulations that appear upon the paper.

Broderick averred in his declaration that before the maturity of the instrument he purchased it in due course from Purse for full value, and that Purse duly indorsed and delivered it to him.

Kennedy admitted that this was so, but sought to avoid the effect thereof by pleading that he signed and delivered the instrument to Purse as surety for Joyce on Purse's promise to obtain Joyce's signature and thereupon to advance the money to Joyce, that Purse failed to make the loan, failed to obtain Joyce's signature, and wrongfully sold the instrument to Broderick, and that this was done without his knowledge or consent.

On the court's sustaining a demurrer to this plea, Kennedy declined to move further, and judgment followed.

Prior to 1911 Missouri had adopted the Uniform Negotiable Instruments Act. R. S. Mo. 1909, § 9972 et seq.

James M. Rader, of Kansas City, Mo., for plaintiff in error.
Edmund W. Burke, of Chicago, Ill., for defendant in error.

Before BAKER, SEAMAN, and MACK, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). Under the general law, as well as under the Negotiable Instruments Act, the writing in question, if the small-type matter in the lower left corner be disregarded, constitutes a perfect negotiable promissory note.

Does the inclusion within the same document of an agreement respecting a pledge of collateral securities, by the terms of which the pledgee may anticipate maturity, sell collaterals, and leave an uncertain amount unpaid, render the instrument nonnegotiable?

No, if this is a question of Missouri law. For her courts have clearly and unmistakably arrived at the following position: If two instruments are executed at the same time, in the course of the same transaction, and covering the same subject-matter, they are to be read and construed together as one instrument. But this doctrine does not apply to a transaction in which two separate and distinct matters are involved. Each is to be considered and interpreted as a complete entity, whether they be written upon one paper or several. An unconditional

promise to pay a certain sum at a certain time is a matter apart from security by way of deed of trust or mortgage of land or pledge or mortgage of chattels. One is governed by the law merchant, the other by property laws. The owner may rely, if he chooses, exclusively upon the promise to pay, according to its terms. Conditions for his benefit in the mortgage or pledge agreement may be availed of only in his capacity of mortgagee or pledgee; they are limited to the purposes of the mortgage or pledge; they cannot be read into the promise to pay, and so render a certain promise uncertain, convert a negotiable into a non-negotiable instrument. Morgan v. Martien, 32 Mo. 438; Mason v. Barnard, 36 Mo. 384; Hurck v. Erskine, 45 Mo. 484; Brownlee v. Arnold, 60 Mo. 79; Whelan v. Reilly et al., 61 Mo. 565; Noell v. Gaines, 68 Mo. 649; Owings v. McKenzie, 133 Mo. 323, 33 S. W. 802, 40 L. R. A. 154; McMillan v. Grayston, 83 Mo. App. 425; Board of Trustees of Westminster College v. Peirsol et al., 161 Mo. 270, 61 S. W. 811; Curry v. La Fon, 155 Mo. App. 678, 135 S. W. 511.

If the question is one of general law, the answer is the same. In Chicago Ry. Co. v. Merchants' Bank, 136 U. S. 268, 10 Sup. Ct. 999, 34 L. Ed. 349, within one document were contained an unconditional promise to pay a certain sum at a certain time and a collateral agreement that the note, being one of a series given to the Northwestern Car Company for the purchase of cars, should become due and payable on default of payment of principal and interest of any note of the series, and that the title to the cars should remain in the payee for the equal and ratable security of all the notes.

"The agreement that the title should remain in the payee until the notes were paid—it being expressly stated that they were given for the price of the cars sold by the payee to the maker and were secured equally and ratably on the property—is a short form of chattel mortgage. The transaction is, in legal effect, what it would have been if the maker, who purchased the cars, had given a mortgage back to the payee, securing the notes on the property until they were all fully paid. The agreement, by which the vendor retains the title and by which the notes are secured on the cars, is collateral to the notes and does not affect their negotiability."

But even if the two matters were to be read together, it is clear that the stipulations for additional collaterals and the sale of collaterals are pertinent only to the pledge part of the transaction, and that the only condition which could, in any event, be carried into the promise to pay part is the one by which maturity might be anticipated. That condition, however, could only affect the time provision of the note to the extent of causing the maker to promise to pay 90 days after date, or sooner on demand of the holder after the maker's default in putting up additional securities. The applicable doctrine is correctly stated, we believe, in Hunter v. Clarke, 184 Ill. 158, 56 N. E. 297, 75 Am. St. Rep. 160:

"There can be no difference, in principle, between the exercise of an option by the maker to pay before a certain day, or a provision that the note shall be due upon the happening of some event prior to the date fixed and an option of the holder to declare it due upon the occurrence of some event."

The judgment is affirmed.