GEORGE W. BOWEN, ADMINISTRATOR OF DEBORAH STOCKS,
v. E. L. DAUGHERTY ET AL.

(Filed 17 February, 1915.)

1. Contracts—Married Women—Necessaries—Husband's Liability—Promise of Wife—Indebitatus Assumpsit.

The common-law rule that the husband is liable for the funeral expenses of his deceased wife and for "necessaries" during their married life is not affected by chapter 109, Laws 1911, authorizing a married woman to contract and deal as if she were unmarried, with certain reservations, when there is nothing to show an express promise to pay on her part, or that the articles were sold on her credit or under such circumstances as to make her exclusively or primarily liable according to the equitable principles of *indebitatus assumpsit.*

2. Estates—Creditors—Distributions—Interpretation of Statutes.

Revisal, sec. 87, is only designed to recognize priorities among the creditors of the deceased and to establish the order of payment between claimants who have valid debts against the deceased, and was never intended to create a liability which did not otherwise exist.

3. Contracts—Married Women—Separate Estate—Necessaries—Funeral Expenses—Husband's Liability—Interpretation of Statutes.

If the wife, having a separate estate, predecease her husband, and the latter dies with property amply sufficient to pay his debts and funeral expenses, and those of his wife for necessaries, and leaves a will disposing of all of his property, the funeral and other necessary expenses of the wife are chargeable to the husband's estate, as an expense for which he is liable under the common law and in preference to the beneficiaries under the husband's will, in the absence of proof that the wife had in some way assumed personal liability therefor. Ch. 109, Laws 1911; Revisal, sec. 87.

CLARK, C. J., concurring; BROWN, J., did not sit or participate in the decision of this case.

APPEAL by defendants from *Bond, J.,* at August Term, 1914, of WASHINGTON.

Petition to sell land for assets, instituted before the clerk Superior Court and transferred to civil-issue docket on denial of any and all indebtedness.

On the hearing it was properly made to appear that Mrs. Deborah Stocks, formerly the wife of John Stocks, died intestate, December, 1913, leaving a tract of land and very little or no personal property, and that petitioner, G. W. Bowen, duly qualified as administrator and instituted present proceedings to sell her land for assets to pay debts; that claims had been presented amounting to more than $300, consisting of funeral and burial expenses, tombstone, doctor's bills and nursing during her last illness, the latter part of 1913, from September to 31 December.

"Third. That all of the said accounts were made since an act was passed giving married women the right to contract and were made between September, 1913, and 31 December, 1913, the period covered by the last illness of the said Mrs. Stocks.

"Fourth. That at the time of the death of Mrs. Stocks and during the time that said accounts were contracted the said Mrs. Stocks and her husband were living together as man and wife, and the said Mr. Stocks was at home during said period.

"Fifth. John Stocks, husband of Deborah Stocks, died shortly after the death of Deborah Stocks, leaving a last will and testament by which he devised and bequeathed all of his property to Mrs. Kitty Brown (one of the claimants) for life, and after her death to the children of Mrs. Kitty Brown, and appointed Mrs. Kitty Brown executrix, and that the said Mrs. Kitty Brown has duly qualified as executrix of said will.

"Sixth. That Mrs. Deborah Stocks did not leave sufficient personal property to pay the claims above referred to, but did leave sufficient real estate, if her estate is liable therefor.

"Seventh. That John Stocks, her husband, left sufficient property to pay all of the above claims, if they are properly chargeable against his estate, in addition to all other debts of his estate.

"Eighth. That all of the items in all of the above claims were necessary to the comfort, the proper care and proper apparel of the deceased lady, and that the amount due the two Mrs. Browns, if anything, for nursing, were also necessary for the comfort and proper care of the said Mrs. Stocks during her illness.

"Ninth. That Mrs. Deborah Stocks left no children, but did leave sisters, nephews, and nieces, all of whom have been properly made parties defendant to this proceeding.

"Tenth. That there was no evidence of any express contract on the part of Mrs. Stocks for any of the supplies, etc., or medical attention, etc., nursing, etc., represented by the claims filed."

On these facts, the court below being of opinion that the real estate of the deceased wife was liable, there was verdict establishing indebtedness and judgment directing that the clerk proceed accordingly in the proper administration of the estate.

Defendants, having duly excepted, appealed.

*Louis W. Gaylord for plaintiff.*
*Rouse & Land and E. R. Wooten for defendant.*

HOKE, J., after stating the case: At common law the husband was liable for the funeral expenses of his deceased wife and for "necessaries" during their married life; the term including "the cost of clothing, food, ordinary household supplies, medical attendance, expenses of sickness, etc., as well as articles of comfort suitable to the condition and style in which the parties were accustomed to live." *Smyley v. Reese,* 53 Ala., 89; *Kethrer v. Nelson,* 146 Ky., 7; *Estate of Eva Walsch, decd.,* 166 Pa. St., 204; *Cunningham v. Erwin,* 7 Leary and Rawle, 247; *Sears v. Giddy,* 41 Mich., 590; *Stonesifer v. Shriver,* 100 Md., 854; 21 Cyc., pp. 1219-1224.

As a general rule, neither the wife nor her estate was legally liable for such claims, though courts, empowered to administer her estate on equitable principles, have enforced them in certain instances (*In re McMyne,* L. R., 1886, Chan. Div., 575), a position which has been allowed to obtain, in this country, where the husband has failed to pay and, being insolvent, payment from him or his estate could not be enforced. *Carpenter v. Hazelrig,* 103 Ky., 538; *Gould v. Moulahan,* 53 N. J. Eq., 341; *Fogg v. Holhook,* 88 Me., 169-80; 33 L. R. A., 660, and note.

This being the law formerly existent here, the Legislature enacted the statute known as the Martin act (ch. 109, Laws 1911) and which provided, in effect, that except in conveyances of her real estate and in case of contracts with her husband, a married woman was authorized to contract and deal as if she were unmarried; and it is chiefly contended that, under and by virtue of the provision of this statute, the wife and her estate have become absolutely and primarily liable for the claims filed in this proceeding.

The law having removed the inability of married women, in ordinary instances, to bind themselves by contract, they can be held liable under their express agreement and when the goods are sold to them on their credit. This was held in *Lipinsky v. Revell,* 167 N. C., 508, and undoubtedly in proper instances married women may now be held liable in the common counts in assumpsit. *Kinkson v. Williams,* 41 N. J. L., 35; *Ackley v. Westerfeldt,* 86 N. Y., 448; Stewart on Husband and Wife, secs. 375 and 381. But, in the absence of such express promise and of any evidence tending to show that credit was given to her or of any facts or circumstances to make her exclusively or primarily liable under the general equitable principles of *indebitatus assumpsit,* we see no reason, before or since the statute, why a debt of the husband should be imputed to the wife. True, the general rule is that when goods are supplied or services rendered by one person for another, the law implies

a promise to pay what they are reasonably worth; but the principle, in our opinion, should not control when the goods were acquired or services rendered under circumstances which created a recognized liability in some one else. In such case there should be additional proof showing an express promise or, as stated, facts and circumstances bringing the demand under the equitable principles of *indebitatus assumpsit.* This, we think, is the correct view as to the effect of the statute in such cases, and the position is in accord with authoritative decisions on the subject in other States. *Moore v. Copely,* 165 Pa. St., 294; *Nelson v. Spaulding,* 11 Ind. App., 453; *Nelson v. O'Neal,* 11 Ind. App., 296; *Wilson v. Herbert,* 41 N. J. L., 243.

We are aware of a number of decisions, and by courts of eminent ability and learning, to the effect that the estate of the deceased wife is primarily liable on claims of this kind by reason of their statutes as to the proper administration of estates, and which provide, in differing terms, that debts for funeral expenses, medical bills, and services within a stated period, etc., shall be paid, etc. *Estate of Skillman,* 146 Iowa, 601; *Schneider's Estate v. Brüer,* 129 Wis., 446; *Constantides v. Walsh,* 146 Mass., 281; *McLellan v. Felson,* 44 Ohio St., 184.

It may be that, owing to special phraseology of these statutes, a position of that kind can be upheld, but, so far as our own enactment is concerned (Revisal 1905, sec. 87), we do not hesitate to hold that the statute is only designed to recognize priorities and to establish the order of payment as between claimants who have valid debts against the estate, and was never intended by the lawmakers to create a liability which did not otherwise exist.

As heretofore stated, if the husband, liable for indebtedness of this kind, should fail to pay, or, his estate being insolvent, payment could not be enforced, authority is to the effect that an equity might arise to the creditor enabling him to collect from the wife's estate; but otherwise, and except under conditions formerly referred to, the debt is and continues to be that of the husband and enforcible against him or his estate.

From the case on appeal it appears that all of these claims are for funeral expenses or for necessaries, and that these last were supplied to the wife when she was living with her husband and without any express promise on her part to pay for same, and, further, that the husband died shortly after the wife, leaving an estate sufficient to pay all of his debts, including those involved in this proceeding, and that he devised his property to Kitty Brown for life and, after her death, to her children, she being one of the principal claimants against the wife's estate. Applying the principles, as above stated, we are of opinion that there was error in holding the wife's estate liable, and the judgment to that effect must be

Reversed.

CLARK, C. J., concurring: The statute, ch. 109, Laws 1911, known as the "Martin act," in no wise enlarges or restricts the common-law liability of the husband for the support of his wife.

While that statute authorizes a married woman to contract and deal as if she were unmarried, and while chapter 13, Laws 1913, authorizes her to receive and collect her earnings and damages for wrongs done her, either to her person or property, neither of these acts relieves her husband of his common-law liability for her support nor renders her liable therefor except in such cases as she shall have contracted obligations upon her own responsibility.

The husband does not become liable as surety for his wife's contracts, nor responsible for debts contracted by her, except for her support, as above stated. And she is not made responsible for articles bought for such support except where by contract, express or by her conduct she leads the seller reasonably to understand that she is assuming individual responsibility. In the latter case the husband would still remain liable, and the seller can recover against either or both.

BROWN, J., did not participate in the decision of this case.