## L. E. SIMPSON v. J. K. DRAKE.*

### (*Nashville.* December Term, 1923.)

1. **HUSBAND AND WIFE.** Duty to support wife includes medical
services and burial expenses.

At common law and under statutes, especially Shannon's Code, section
·6888a7, making it a misdemeanor willfully to neglect a wife's sup-
port, husband's duty to furnish his wife suitable support includes
medical services and duty to pay burial expenses. (*Post, p.* 85.)

Code cited and construed: Sec. 6888a-7(s.)

2. **COMMON LAW.** Force and effect stated.

England's common law, so far as not inconsistent with the form of
government, and not positively and definitely changed by statute,
is in full force and effect in Tennessee. (*Post, p.* 86.)

Case cited and approved: E. W. M. v. J. C. M., 2 Ch. App., 473.

3. **HUSBAND AND WIFE.** Statute held not to relieve husband of
paying wife's funeral expenses.

Shannon's Code, section 4090, requiring commissioners to deduct from
the whole estate claims for funeral expenses, passed before the
statutes removing married women's common-law disabilities, did
not relieve husband of his common-law duty to pay his wife's
funeral expenses. (*Post, pp.* 86, 87.)

Acts cited and construed: Acts 1833, ch. 36, sec. 4; Acts 1919, ch.
126.

---

*On liability of separate estate of wife for her funeral expenses,
see notes in 6 L. R. A. (N. S.), 917; 37 L. R. A. (N. S.), 754; 15
A. L. R., 852.

On liability of husband for funeral expenses and medical attend-
ance during wife's last sickness, see note in 47 L. R. A. (N. S.), 283.

Simpson v. Drake.

Case cited and distinguished: Bowen v. Daugherty, 168 N. C., 242.

4. **HUSBAND AND WIFE.** Wife's estate liable for her funeral expenses where husband insolvent.

A wife's separate estate is liable for her funeral expenses where the husband is insolvent, or on account of poverty is unable to pay them. (*Post, pp.* 87, 88.)

Cases cited and approved: Hall v. Stewart, 135 Va., 384; Bowen v. Daughterty, 168 N. C., 242; Smyley v. Reese, 53 Ala., 89; Kenyon v. Brightwell, 120 Ga., 606; Ketterer v. Nelson, 146 Ky., 7; Gallaway v. McPherson, 67 Mich., 546; Lott v. Graves, 67 Ala., 40; Staples' Appeal, 52 Conn., 425; Stonesifer v. Shriver, 100 Md., 24; In re Skillman, 146 Iowa, 601; Constantinides v. Walsh, 146 Mass., 281; Moulton v. Smith, 16 R. I., 126; Morrissey v. Mulhern, 168 Mass., 412; Patterson v. Patterson, 59 N. Y., 574; McClellan v. Filson, 44 Ohio St., 184; Schneider v. Breier, 129 Wis., 446.

*Headnotes 1. 30 C. J., Husband and Wife, section 146; 2. 12 C. J., Common Law, section 6; 3. 30 C. J., Husband and Wife, section 146; 4. 30 C. J., Husband and Wife, section 156.

FROM RUTHERFORD.

Error to the Chancery Court of Rutherford County.— HON. E. D. HANCOCK, Chancellor.

C. C. JACKSON, for plaintiff in error.

BROWN & WHITAKER, for defendant in error.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

By stipulation of counsel but one question is submitted for decision, viz:

Is the husband primarily liable for the medical bills incurred during the last illness of his wife, and for her burial expenses, where she leaves a separate estate?

Under the common law it was the duty of the husband to furnish the wife suitable suport, including medical services during her life, and to bury her when she dies. The duty of burying her was included in the duty of maintaining her.

The common law of England, in so far as it is not inconsistent with our form of government, and not positively and definitely changed by statute, is in full force and effect in this State. *E. W. M.* v. *J. C. M.*, 2 Ch. App., 473.

Our law even goes further, and makes it a misdemeanor for a husband to fail to provide for his wife. Section 6888a7 of Shannon's Code is as follows:

"It is declared to be a misdemeanor for any husband to, willfully and without good cause, neglect or fail to provide for his wife according to his means, or leave her destitute, or in danger of becoming a public charge."

In a number of decisions, in the various States of the Union, based upon constructions of local statutes, it has been held that the wife's estate is primarily liable for her burial expenses; and a few cases hold her estate liable for medical bills incurred in her last illness.

It is also generally held that, where the wife specifically provides in her will for the payment of such expenses out of her estate, it becomes primarily liable therefor.

But, in the absence of such statutory provision, it is uniformly held that these duties devolve upon the husband.

In the cause under consideration, therefore, the husband is primarily liable for the medical services rendered his wife in her last illness and for her burial expenses unless this obligation has been changed by statute.

Counsel for complainant insist that this change was

its execution, is not due at a fixed and determinable period at all, unless it be treated as due from and after delivery"—citing a number of authorities.

In *White* v. *Hatcher,* supra, the several notes sued on each contained the following provision:

"In default of payment of any of the said notes, the whole shall become due. . . ."

It was insisted that this provision rendered the notes nonnegotiable on the ground that the time of payment thereof was uncertain. It was held that this uncertainty did not depend on the whim or caprice of the holder, as in the case of *Bank* v. *Russell.* It was further held that, under subsection 3 of section 2 of the Negotiable Instruments Act (Laws 1899, chapter 94), a note payable in installments might contain a provision that upon default in the payment of any installment or interest the whole might become due.

It will be noted that the provisions in the notes sued on in *Bank* v. *Russell* and *White* v. *Hatcher,* supra, are unlike the provisions in the two notes sued on in the instant cause and these cases are not controlling.

In *Holliday State Bank* v. *Hoffman,* supra, decided by the Supreme Court of Kansas, the note contained a clause similar to that in the two notes here involved. The provision there was:

"If, in the judgment of the holder of this note, said collateral depreciates in value, the undersigned agrees to deliver when demanded additional security to the satisfaction of said holder: otherwise this note shall mature at once. . . ." (Providing for the disposition of collateral, etc., as in the present cause.)

The court, speaking through Mr. Justice Porter, held that this provision rendered the note nonnegotiable because the provision rendered doubtful and uncertain the time at which it should become due; that, according to the provision contained in the note for the acceleration of its maturity by the failure of the maker to do something in addition to the payment of money, and both contingencies being made to depend upon something over which the maker did not have absolute control, rendered the time of payment uncertain and indefinite.

A contrary view was taken by the court in *Finley* v. *Smith,* 165 Ky., 445, 177 S. W., 262, L. R. A., 1915F, 777; *Kennedy* v. *Broderick,* 216 Fed., 137, 132 C. C. A., 381, L. R. A. 1915B, 472; *Des Moines Savings Bank* v. *Arthur,* 163 Iowa, 205, 143 N. W., 556, Ann. Cas., 1916C, 498; *Mechanic Nat. Bank* v. *Warner,* 145 La., 1022, 83 South. 228; *Empire Nat. Bank* v. *High Grade Oil Refining Co.,* 260 Pa., 255, 10 Atl., 602.

In *Finley* v. *Smith,* supra, the court said:

"Without citation of further authority, we are inclined to adopt the view that the conditions relied on as destroying the negotiable character of this note do not accomplish that purpose. The essential things pointed out in section 1 of the act are: (1) That the instrument must be in writing, signed by the maker; (2) must contain an unconditional promise to pay a sum certain in money; and (3) must be payable on demand or at a fixed future time; (4) must be payable to the order of a specified person or to bearer. And the independent promise in this note pledging the holder upon demand to put up additional collateral did not substantially affect any of these requirements. The promise to strengthen the collateral under

penalty of the note maturing at once did not change the date of its maturity any more than would the provision in a note payable in installments that upon default in the payment of the installment the whole should become due.

"We think the promise to do an act in addition to the payment of money that will render the note not negotiable must be a promise that conflicts with some one of the essential characteristics of a negotiable note; or, as applied to the case in hand, it must be a promise to do something that would affect the unconditional promise contained in the body of the instrument, at the time fixed for its maturity. The Negotiable Instrument Law, in section 2, permits a note to be made payable in installments, with a provision that upon default in the payment of any installment the whole shall become due. Under this provision, if any installment of a note payable in installments at a fixed time is not paid, this delinquency precipitates the maturity of the note and thereby changes the time fixed for its maturity as certainly as does the stipulation that if the value of the collateral is impaired, other collateral should be supplied or else the note will become due.

"It is quite usual to pledge collateral as security for the payment of a negotiable note, and we do not think that any narrow construction of the law should be adopted that would have the effect of impairing the value of this kind of security or that would deny to the holder the right to insist that if the value of the collateral deposit should become impaired, the maker must strengthen it or else precipitate the maturity of the paper. This condition in the note is merely supplementary to the fixed and controlling promises and is really nothing more than additional security for the payment of the instrument. It is

150 Tenn.—6.

not, strictly speaking, 'an order or promise to do an act in addition to the payment of money,' but is rather an order or promise to do an act that will better secure the promise to pay the money stipulated at the time fixed in the note. If this condition or promise would disturb the negotiability of commercial paper, the effect would necessarily be to lessen the value of collateral as security, because holders of paper would not be dispoed to accept collateral, much of which has a fluctuating value, if they were denied the right to insist that its value should be maintained in an amount sufficient to serve the purpose for which it was accepted."

In *Kennedy* v. *Broderick,* supra, the court ruled that a condition in a note that "if, in the judgment of the holder of this note, said collateral depreciates in value, the undersigned agrees to deliver when demanded additional security to the satisfaction of said holder; otherwise this note shall mature at once," did not affect its negotiable quality.

In 1 R. C. L., Supplement, 1917, it is said that in *Finley* v. *Smith,* supra, the court presents a very clear analysis of the Negotiable Instruments Act and comments on the diverse conclusions reached by the courts in *Kennedy* v. *Broderick,* supra, and in *Holladay State Bank* v. *Hoffman,* supra, and that the former of these precedents is preferred.

Counsel for appellant undertake to distinguish between the provisions in the notes involved in *Kenndy* v. *Broderick* and *Finley* v. *Smith,* supra, and that in the notes under consideration, and therefore insist that those cases are not in point; but, without discussing those cases more in

effected as to burial expenses by chapter 36, section 4, Acts of 1833 (section 2350 of the Code of Tennessee; *Shannon's* Annotated Code, section 4090), which is as follows:

"Be it enacted, that it shall be the duty of commissioners as provided for in this act, first, to deduct from the whole estate, any fees due in the administration thereof, claims for funeral expenses, debts or arrearages due to this State, and such articles as are now by law exempt from execution if such belong to the estate, and make a distribution *pro rata,* of the balance of the estate."

This is a very old statute, passed long before our enactments removing the common-law disabilities of married women with respect to their property, and we find nothing in the statute that would justify us in holding that the legislature intended to relieve the husband of the duty, long existing, of burying his wife, and charging the estate of the wife with this expense.

The Supreme Court of North Carolina, in a recent decision (*Bowen* v. *Daugherty,* 168 N. C., 242, 84 S. E., 265, Ann. Cas., 1917B, 1161), construing a statute similar to our own, said that—

"We do not hesitate to hold that the statute is only designed to recognize priorities and to establish the order of payment as between claimants who have valid debts against the estate."

Other courts have given similar statutes the same construction.

Neither do we find anything in the Married Woman's Act (chapter 126, Acts of 1919), which relieves the husband of his common-law liability of burial of the wife.

We are of the opinion, however, that the estate of the wife is liable for her funeral expenses where the husband

is insolvent, and where, on account of his poverty, he is unable to discharge such obligation; and this holding is based upon the same principle that the estate of a minor or a married woman is liable for necessaries furnished them where the father and husband was unable to provide them, and upon the further ground of the necessity of burial and in furtherance of decency and the public health.

In the following cases the matters herein referred to are fully discussed and the authorities are collated. *Hall* v. *Stewart,* 135 Va., 384, 116 S. E., 469; *Bowen* v. *Daugherty,* 168 N. C., 242, 84 S. E., 265, Ann. Cas. 1917B, 1161; *Smyley* v. *Reese,* 53 Ala., 89, 25 Am. Rep., 598; *Kenyon* v. *Brightwell,* 120 Ga., 606, 48 S. E., 124, 1 Ann. Cas., 169; *Ketterer* v. *Nelson,* 146 Ky., 7, 141 S. W., 409, 37 L. R. A. (N. S.) 754; *Gallaway* v. *McPherson,* 67 Mich., 546, 35 N. W., 114, 11 Am. St. Rep., 596; *Lott* v. *Graves,* 67 Ala., 40; *Staples' Appeal,* 52 Conn., 425; *Stonesifer* v. *Shriver,* 100 Md., 24, 59 Atl., 139; *In re Skillman,* 146 Iowa, 601, 125 N. W., 343, 140 Am. St. Rep., 295; *Constantinides* v. *Walsh,* 146 Mass., 281, 15 N. E., 631, 4 Am. St. Rep., 311; *Moulton* v. *Smith,* 16 R. I. 126, 12 Atl. 891, 27 Am. St. Rep., 728; *Morrissey* v. *Mulhern,* 168 Mass., 412, 47 N. E., 407; *Patterson* v. *Patterson,* 59 N. Y., 574, 17 Am. Rep., 384; *McClellan* v. *Filson,* 44 Ohio St., 184, 5 N. E., 861, 58 Am. Rep., 814; *Schneider* v. *Breier,* 129 Wis., 446, 109 N. W., 99, 6 L. R. A., (N. S.), 917.

The court of civil appeals and the chancellor were correct in holding the husband liable for these expenses.

It results that the writ will be denied.