**In re Robert Eugene NETHERTON, Sr., Bankrupt.**

**Enola Gay Lunn NETHERTON, Plaintiff,**

**v.**

**Robert Eugene NETHERTON, Sr., Defendant.**

**Bankruptcy No. 79–30067.**

United States Bankruptcy Court, M. D. Tennessee.

Dec. 11, 1979.

Robert M. Garfinkle, Nashville, Tenn., for plaintiff.

Leon Ruben, Nashville, Tenn., for defendant.

## MEMORANDUM

RUSSELL H. HIPPE, Jr., Bankruptcy Judge.

In this adversary proceeding the former wife of the bankrupt seeks a determination that certain debts to third parties incurred during the marriage—primarily for medical services rendered to her—are excepted from the discharge.[1] In an agreement incorporated in the final divorce decree the bankrupt agreed to pay all joint obligations and all medical, hospital, and doctor bills incurred during the marriage. The court is satisfied that this undertaking by the bankrupt—especially in light of the fact that there are no other provisions in the agreement or the decree which might be characterized as alimony, the bankrupt not even having been obligated to pay his former wife's attorney's fees—does not evidence any intent to impose on the bankrupt a post-martial obligation to support his wife[2] and thus should not be characterized as alimony.[3] The court is satisfied, however, that the bankrupt's obligation to pay these debts has its genesis in the common-law duty to provide support for his wife and

---

1. In her complaint the plaintiff listed twenty-four creditors which had been included in the bankrupt's schedules. The bankrupt has renewed the obligation with and apparently has been current on his payments to the largest creditor which has a security interest in household furnishings being used by the plaintiff and the minor children of the parties. At the hearing the bankrupt agreed to pay the debt to another creditor with a security interest in a freezer also being used by plaintiff and the children. Two creditors were deleted by the plaintiff. Two other debts the parties agreed were incurred after the divorce. There remain claims for medical and related services rendered to the wife and children, mostly to the wife. The debt to the remaining creditor was incurred for the purchase of clothing for the wife and children.

2. The plaintiff, as well as the bankrupt, had been employed for several years prior to the divorce. There is no indication in the record of the amount of her income. The only indication of the bankrupt's income is that reflected in his statement of affairs. As an order filler at an office products company he received approximately $11,500 in 1976; $12,000 in 1977.

3. The plaintiff relies upon the decision in *In re Goetz*, Bk. No. 74–284 (M.D.Tenn. May 28, 1974) (B.J.) to characterize the bankrupt's obligation as alimony. That opinion, however, was substantially modified by the opinion in *West v. West*, Bk. No. 75–75 (M.D.Tenn. Jan. 30, 1978) (B.J.) which is consistent with the result reached herein.

minor children during marriage[4] and that the principal issue to be resolved is whether it may be characterized as support and thus excepted from the discharge under § 17a(7) of the Bankruptcy Act of 1898, as amended, 11 U.S.C. § 35a(7) (1966), which provides pertinently as follows:

A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . (7) are for alimony due or to become due, or for maintenance or support of wife or child, . . .

 Although it is well settled that in determining whether a debt comes within this exception the bankruptcy court must look to state law for its characterization, e. g., *Waller v. Waller*, 494 F.2d 447 (6th Cir. 1974), resolution of this issue is ultimately determined by federal bankruptcy law. The public policy reflected in the Act has caused the courts to give the phrase "maintenance or support of wife or child" a narrow construction and a restricted application. Thus, even though the obligation to provide medical services for the wife during marriage is clearly recognized in Tennessee as a common-law support duty of the husband, e. g., *Simpson v. Drake*, 150 Tenn. 84, 262 S.W. 41 (1924), it does not necessarily follow that it comes within this exception to the discharge.

Very early in the history of the Bankruptcy Act the district courts in New York placed a restriction on the application of this phrase which has become accepted generally, 1A Collier, Bankruptcy ¶ 17.19 (14th ed. 1978), and has been applied in this circuit, *General Protestant Orphans' Home v. Ivey*, 240 F.2d 239 (6th Cir. 1956). In a 1905 opinion, which is set out in its entirety below, the court for the eastern district of that state stated the following in holding that the claim of a creditor who had furnished medical services to the bankrupt's wife did not come within the support clause, which was added along with the alimony

exception by a 1903 amendment and was codified until 1970 in § 17a(2) of the Act:

It is considered that the words in section 17a, cl. 2, Bankr.Act July 1, 1898, c. 541, 30 Stat. 550, as amended Act Feb. 5, 1903, c. 487, § 5, 32 Stat. 798 [U.S.Comp.St. Supp.1903, p. 411], 'for maintenance or support of wife or child,' do not refer to a debt incurred for the services of a physician called by the husband to attend the wife while she is in normal relation to her husband. If so, a person supplying goods for a wife or child or rendering a service necessary for support or maintenance, at the request of the husband, without delinquency on his part, would be beyond the scope of the act. The grocer, ·the marketman, clothiers of all descriptions, physicians, dentists, in fact all who, by service or sale, contribute to the support of the family, and thereby to the support of a wife or child, would have claims not dischargeable under the act. The provision has probable application to cases where the person applying for discharge from his debts had so betrayed his moral and legal duty as a husband or parent that another was justified in providing the maintenance and support denied by the one upon whom the law places the primary duty. Without attempting to define the limits of the section, it is held that it does not apply to medical attendance furnished upon the express or implied contract of the husband or parent to pay therefor while the recipient is a member of the family, and while there is no breach of duty on the part of the person contracting the debt toward the one receiving the service.

*In re Ostrander*, 139 F. 592 (E.D.N.Y.1905).

In 1926 the district court for the western district of that state held a judgment debt to come within the support clause exception when it was for room and board provided an ailing wife whom the bankrupt husband had refused to support. *In re Meyers*, 12 F.2d 938 (W.D.N.Y.1926). The court distin-

---

4. All of the 19 debts in issue (see footnote 1) were incurred for medical and related services and for clothing for the plaintiff and the minor children. Thus, all would fall within the husband's common-law support duty. 41 Am. Jur.2d *Husband and Wife* § 365 (1968).

guished the *Ostrander* situation by noting that "[t]he claim in question does not arise from any contract or business transaction, or a debt incurred while normal relations existed between husband and wife." *Ibid.* The court concluded:

It was the unquestionable duty of the husband to support and maintain his wife during her entire illness, and, having refused to do so, the liability established by the judgment, in my opinion, comes within the excepted provision.

*Ibid.*

A few years later this same court held that the judgment of a boarding school resulting from the bankrupt father failing to pay the institution for the care and education of his minor children as he had contracted to do did not come within this exception and was discharged. *In re Lo Grasso*, 23 F.Supp. 340 (W.D.N.Y.1938). The court noted:

The language 'for maintenance or support of wife or child' of § 17, subdivision (2), supra, refers only to the involuntary liability under the common law for support of wife and children. It does not cover liability to third parties for necessaries furnished for them.

*Ibid.*

Citing *Lo Grasso*, the Sixth Circuit Court of Appeals in 1956 held that a judgment for the room and board of the minor children of the bankrupt was discharged. *General Protestant Orphans' Home v. Ivey*, 240 F.2d 239 (6th Cir. 1956). The court stated that the support clause "covers only the liability of a husband and father under the common law for support of wife or child and does not cover his liability to third parties for necessaries furnished for wife or child." *Id.* at 240.

The general rule as to the application of the support clause is expressed in Collier's as follows:

The above quoted portion of clause (7) applies to the common-law liability involuntarily imposed upon the parent for the support of wife or child. 'It was intended to include liability where a parent had failed or refused to make provision for maintenance and such was furnished by another.' It does not include contracted liabilities for goods purchased (although these may be necessaries), medical attendance furnished, or board supplied, by a parent for the use and benefit of the wife or child. Nor does it apply to the liability on a bond given by bankrupt to secure the performance of a third person's contract to support his (the latter's wife).

1A Collier, Bankruptcy ¶ 17.19 (14th ed. 1978). [footnotes omitted]

■ The record in this case is meager. Little or no proof was offered other than a copy of the divorce decree. There is no indication of any kind that the bankrupt had ever refused to support his wife or their two minor children during the marriage. Thus, based on the record before the court, the creditors to whom the debts in issue are owed would not be entitled to have their debts excepted from the discharge under the support clause. The cases discussed above, however, and those which appear in the footnotes to the passage quoted from Collier's deal only with attempts by such creditors to except their debts from the discharge, not with such efforts on the part of the wives or children. The additional fact that a wife insists that such debts be excepted from the discharge should not alter the result. Otherwise, the rule which prohibits the creditors from having the debts excepted would be circumvented. The reason for the courts restricting the application of the support clause is equally applicable to the wife's claim of exception.

The opinion in *Ostrander* indicates clearly and succinctly why it has been necessary for the courts to restrict the application of the support clause. As the *Simpson v. Drake* opinion demonstrates, the common-law support duty imposes on the husband the obligation to pay all medical bills without any reference to the wife's financial needs. In this district medical expenses are the leading cause of financial difficulties necessitating individuals to seek relief un-

der the Bankruptcy Act.[5] If doctors and hospitals were able to except their debts from the discharge under the support clause, relief under the Bankruptcy Act would be denied to numerous, honest debtors whose spouses or children unfortunately required extensive medical care. This rationale applies, of course, to other support obligations. If a wife were able to compel a bankrupt husband to pay his support obligations as exceptions to the discharge, the result as a practical matter would be the same as if the creditors providing the goods and services were able to do so. In addition, it obviously would be disruptive of the marital relationship. This court has previously determined that past-due alimony. is an asset of the estate of a bankrupt wife, *Waldschmidt v. Houghland*, 5 Bankr.Ct.Dec. 651 (M.D.Tenn.1979) (B.J.), and can discern no reason why past-due support would not also be an asset of her bankruptcy estate. Thus, if the restriction is not applied when husband and wife both file for relief under the Bankruptcy Act, the trustee of the wife would be able to pursue the support claim against the husband as an exception to the discharge for the benefit of creditors. The restriction imposed by the courts on the application of the support clause represents a practical compromise between the competing public policies of providing financial support for family members and a fresh start for honest debtors.

■■ In this case, of course, there are additional factors to be considered in that the husband agreed with his wife that he would pay the debts in issue and that the agreement was entered into in connection with their divorce and was incorporated in the final divorce decree. These additional factors render resolution of the issue a much more difficult and much closer question. The court concludes, however, that the restricted application of the support clause nevertheless precludes the former wife excepting the debts in issue from the discharge on the basis of the record before the court. In the opinion of the court, support obligations incurred during marriage, even if incorporated in a divorce decree should be excepted from the discharge only in the limited circumstances alluded to in *Ostrander* and forming the basis for the holding in *In re Meyers*. In *Ostrander* the court indicated that the support obligation would not come within the exception if incurred "while there is no breach of duty on the part of the person contracting the debt toward the one receiving the service." In *In re Meyers* the court held the debt to come within the exception because the husband refused to provide any support for his wife. Thus, to come within the support clause exception, the wife must show that debts arising during marriage were incurred subsequent to and as a consequence of the husband refusing to provide support or otherwise having breached or terminated his duty to provide the support required of the husband while he and his wife are in a normal relationship. When the normal relationship has terminated prior to divorce and the husband no longer endeavors to provide general support for his wife but rather has agreed, for example, to make certain periodic payments to her in lieu thereof, that obligation would be excepted from the discharge. *In re Adams*, 25 F.2d 640 (2d Cir. 1928).

The result reached herein is, of course, consistent with the more traditional approach taken by bankruptcy courts in evaluating the effect of the discharge on a spouse's obligation to pay pre-existing debts contained in a separation agreement or divorce decree. Most courts have narrowed the choice to alimony or property settlement, *e. g., Waller v. Waller*, 494 F.2d 447

---

5. During the first six months of this year the undersigned conducted what can only be described as an informal poll of individual bankrupts during the first meeting of creditors for the purpose of ascertaining the causes of the financial problems which necessitate filing bankruptcy. Inquiries were made of more than 600 individual bankrupts and based upon their response and a cursory review of the information contained in their statements of affairs and schedules it appeared that the following were the major causes of financial difficulties: (1) Medical expenses/health problems, 29%. (2) Loss of Job/reduction in income, 18%. (3) Poor money management, 18%. (4) Business failure, 15%. (5) Domestic difficulties, 13%.

(6th Cir. 1974), apparently giving the concept of property settlement a broad scope as a "final settlement of all differences . . . . as to any claim either might have against the other." *Maiman v. Maiman,* 1 Bankr.Ct.Dec. 286 (S.D.Fla.1974) (B.J.). Presumably this would include claims for past-due support. This court is of the view that although it may be difficult for the spouse asserting application of the support clause to prevail, it is nevertheless an alternative which might be applicable in certain situations. Judge Learned Hand, in *In re Adams,* was faced with a situation in which the husband ultimately obtained the divorce and therefore the wife was not eligible to receive alimony. He looked to the genesis of the obligation to characterize the debt as one for support. He did not, of course, consider the restriction imposed upon the application of the support clause by *Ostrander* and other such cases.[6] The result reached by Judge Hand, however, was consistent with the *Ostrander* rationale.

 It appears to the court that the result reached herein and the rationale for same is consistent with the recent decision by the Second Circuit Court of Appeals in *DuBroff v. Steingesser,* 602 F.2d 36 (2d Cir. 1979). In that case the court held that the attorney who represented the former wife during negotiations for a settlement agreement was entitled to have a state court judgment for her fees excepted from the discharge under the support clause. The court determined that the bankrupt was obligated to pay the fees as necessaries under the common-law support duty. It would appear that at the time the legal services were rendered normal relations between the husband and wife and the husband's support efforts had terminated. Upon the parties being unable to reach agreement, the state domestic relations court ordered the husband to make support payments to his wife.[7]

An appropriate order will be entered.

6. The court notes that Congress has adopted the restricted application of the support clause in the new bankruptcy code, at least to the extent of denying to creditors furnishing necessaries the right to have their claims excepted from the discharge. Only debts "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, . . . ." are excepted. 11 U.S.C. § 523(a)(5) (1979).

7. Neither party has raised either in its pleadings or in oral argument the application of the recent Supreme Court opinion in *Orr v. Orr,* 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979) to either the Tennessee common-law support duty or the support clause in § 17a(7) of the Act and the court is not inclined to do so and base its holding on same *sua sponte.* In addition, no notice has been given to the attorney general of any challenge to the constitutionality of this federal statute as required by 28 U.S.C. § 2403(a). The court of appeals for this circuit has noted that that opinion "unquestionably dooms the Tennessee [alimony] statutes", *Kenner v. Morris,* 594 F.2d 864 (6th Cir. 1979). The Tennessee General Assembly in May of this year amended the state's alimony statutes to render them applicable to either spouse. Ch. 339, 1979 Tenn.Pub.Acts 768. There appears to have been no legislative effort made, however, to render the common-law support duty gender neutral or to make a similar

adjustment in § 39–201 of the Tennessee Code which makes it a misdemeanor for any husband "to wilfully and without good cause neglect or fail to provide for his wife according to his means, or leave her destitute, or in danger of becoming a public charge."

This court has recently had the opportunity to research in some detail Tennessee law concerning alimony and noted that in this state, as well as in most others, alimony is deemed to be founded upon and to be a continuation of the common-law duty of support. *Waldschmidt v. Houghland,* 5 Bankr.Ct.Dec. 651 (M.D.Tenn. 1979) (B.J.). In footnote 2 to that opinion the court noted that in the aftermath of *Orr v. Orr* "alimony cannot continue to be justified on the basis of its origin in the common-law support duty of the husband." As the following comments, which are directed principally to the support clause in the Act, indicate there is a substantial question which this court declines to resolve at this time both as to the constitutionality of the "support of wife" clause of § 17a(7) of the Bankruptcy Act and the support duty imposed upon the husband pursuant to state common-law and statute.

In its application to the wife, the language of § 17a(7) on its face excepts from discharge only maintenance or support obligations incurred by male bankrupts. The maintenance or support provision of § 17a(7) thus on its face establishes that kind of gender-based distinction whose constitutional validity under *Orr v. Orr* requires that the classification both serve and substan-

tially relate to important governmental objectives.

Section 17a(2) was amended by the Congress in 1903 to include liabilities for maintenance or support of wife or child. 1A Collier, Bankruptcy ¶ 17.01[2.1] (14th ed. 1978). The United States Supreme Court in 1904 alluded to the underlying purpose for the amendment when it declared that the Bankruptcy Act

> should receive such an interpretation as will effectuate its beneficent purposes and not make it an instrument to deprive dependent wife and children of the support and maintenance due them from the husband and father, which it has ever been the purpose of the law to enforce.

*Wetmore v. Mankoe,* 196 U.S. 68, 77, 25 S.Ct. 172, 49 L.Ed. 390 (1904); *accord, Dunbar v. Dunbar,* 190 U.S. 340, 23 S.Ct. 757, 47 L.Ed. 1084 (1902); *Poolman v. Poolman,* 289 F.2d 332 (8th Cir. 1961); *In re Smith,* 436 F.Supp. 469 (N.D.Ga.1977).

The Anglo-American common-law concepts of the husband's duty to support the wife and the wife's reciprocal duty to render services dates to the Norman Conquest, when the legal capacity of women with respect to their property rights was merged with that of the husband. Sayre, *A Reconsideration of Husband's Duty to Support and Wife's Duty to Render Services,* 29 Va.L.Rev. 857, 858 (1943); *see* Paulsen, *Support Rights and Duties Between Husband and Wife,* 9 Vand.L.Rev. 709 (1956). These common law reciprocal duties have been characterized as

> more deeply feudal and more oppressive in their pre-suppositions for the wife than those that developed at a corresponding time and have since prevailed in the civil law on the continent. In a word, the law of husband and wife was particularly tied up with feudal obligations in which the role of the wife was very much submerged and the dominance of the husband was not only incident to his own position, but also maintained because of his role in the military and governmental scheme of the feudal pyramid.

Sayre, *A Reconsideration of Husband's Duty to Support and Wife's Duty to Render Services,* 29 Va.L.Rev. 857, 858 (1943). The English model of the well-conducted marriage and the duties of the husband and wife that went with it were adopted in the American colonies. H. Clark, The Law of Domestic Relations in the United States § 7.2 (1968). Although changes subsequently have been adopted in the methods of enforcement to provide the wife with more effective and convenient remedies, "the rules themselves remain substantially the same." Clark, The Law of Domestic Relations § 6.1.

The merging of married women's property rights into those of the husband has disappeared as a legitimate legal basis for the husband's common-law duty of support. In all of the American states except community proper-

ty jurisdictions, statutes have been enacted that give married women almost unlimited control over their real and personal property. 1 American Law of Property § 5.56 (J. Casner ed. 1952); 1 R. Powell, the Law of Real Property ¶ 117 (1977); 3 C. Vernier, American Family Laws 166–85 (1935) (tabular compilation of all state statutes). So insubstantially have the common-law rules relating to the husband's duty of support changed, however, that one commentator has concluded that

> there is more straight feudalism in the law of husband and wife in modern American Law, through the common law, than perhaps in any non-common law country. To put it bluntly, we are backward in this matter, and a reconsideration of our technique seems reasonable.

Sayre, *A Reconsideration of Husband's Duty to Support and Wife's Duty to Render Services,* 29 Va.L.Rev. 857, 859 (1943).

An allocation of family responsibilities under which a wife plays a dependent role is invalid for purposes of the fifth and fourteenth amendments. *Orr v. Orr,* 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979); *Stanton v. Stanton,* 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975). The "old notion" that "generally it is the man's primary responsibility to provide a home and its essentials" can no longer justify a statute that discriminates on the basis of gender. *Orr v. Orr,* 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979); *Stanton v. Stanton,* 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975). Clearly if the maintenance or support provision of § 17a(7) as it relates to the wife is to survive the requirements of the fifth amendment, it must be validated on some other basis.

Statutory discrimination on the basis of gender is permissible under the equal protection clause of the fourteenth amendment if it serves and substantially relates to either of two legitimate and important governmental objectives: (1) a legislative purpose of providing assistance to needy spouses, using sex as a proxy for need; or (2) a legislative purpose of reducing the disparity in economic condition between men and women caused by the long history of discrimination against women. *Orr v. Orr,* 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979); *Califano v. Webster,* 430 U.S. 313, 97 S.Ct. 1192, 51 L.Ed.2d 360 (1977). The approach to fifth amendment equal protection claims is the same as that to equal protection claims under the fourteenth amendment. *Weinberger v. Wiesenfeld,* 420 U.S. 636, 638 n.2, 96 S.Ct. 1225, 43 L.Ed.2d 514 (1975). Even were it demonstrated that sex is a reliable proxy for need and that the institution of marriage did in fact discriminate against women, these factors still would not justify limiting nondischargeability under the maintenance or support provision of § 17a(7) to wives for either of two reasons. First, the court in most jurisdictions apparently already inquire into the parties' relative financial circumstances in determining

58

what items are to be considered as necessaries to be provided by the husband, thus rendering the gender-based distinction gratuitous. *See* H. Clark, The Law of Domestic Relations in the United States § 6.3 (1968). Second, the rule in jurisdictions like Tennessee that the husband's obligation extends to providing necessaries such as medical services without any reference at all to the wife's financial needs belies any substantial relationship that the maintenance or support provision of § 17a(7) might have to either the needy spouse or the compensation objectives. *See In re Deskins*, 214 Tenn. 608, 381 S.W.2d 921 (Tenn.1964); *Williams v. Williams*, 146 Tenn. 38, 236 S.W. 938 (1922). Moreover, most jurisdictions, including Tennessee, by statute permit the wife without any reference to her financial need to enforce her right to support from the husband by obtaining a criminal prosecution against the husband for nonsupport. H. Clark, The Law of Domestic Relations in the United States § 6.5 (1968); Brown, *The Duty of the Husband to Support the Wife*, 8 Va.L.Rev. 823, 849 (1932). Even were the objectives of the maintenance or support provision of § 17a(7) demonstrated to be legitimate and important, the application of the provision according to the dictates of state law would bear little relation whatever to the achievement of those objectives. The gender-based distinction in the language of the maintenance or support clause of § 17a(7) thus appears to be quite vulnerable under the fifth amendment.